STITT *v.* HUIDEKOPERS.

1. It is a rule of evidence that, ordinarily, a witness who testifies to an affirmative is entitled to credit in preference to one who testifies to a negative, because the latter may have forgotten what actually occurred, while it is impossible to remember what never existed.

2. An offer to sell at a fixed price, whether accompanied with an agency to sell to others or not, may be revoked at any time prior to the acceptance of the offer, unless there is an express agreement on good considera-

tion to accept within a limited time, or when other acts are done which the person making the offer consents to be bound by.

3. An offer to take $40,000 in cash is not accepted so as to bind the party by a contract which leaves the buyer at liberty to withdraw by forfeiting a deposit of $10,000, or pay the remainder within sixty days.

4. Although a written agreement between persons not parties to the suit may, as a general rule, be contradicted or explained by oral testimony, this does not apply to an attempt to make good by parol evidence a contract which the law requires to be made in writing to make it valid.

5. When one party gives notice to another to produce on trial a written instrument, and the party who so receives the notice produces and offers to verify it by his oath, the other party cannot refuse to use that paper and introduce a *copy* in the first instance, on the allegation that the first is not genuine, although he might show wherein it was erroneous or defective after it was once introduced.

6. It is not error for a court, leaving to the jury the credibility of the testimony and their belief of certain material facts, to instruct the jury that they must, if they so believe, find for one party, though this may be all that is in contest.

7. Nor is it error for a court in its instructions to limit them to the special contract which alone was considered by counsel on both sides, and when no evidence of the value of services was given or instructions asked as applicable to a common count found in the declaration.

ERROR to the Circuit Court for the Western District of Pennsylvania; the case being thus:

In the latter part of August, 1864, at which time great excitement prevailed in the region of Oil Creek, Northwestern Pennsylvania, and some persons in New York and other eastern cities, were largely speculating in lands there supposed to contain oil, and rapid sales at advancing prices were making of such lands from day to day, Alfred Huidekoper and Frederick W. Huidekoper, his nephew, both of Meadville, near that region, owning of long date, partially in their own rights but more largely in a fiduciary capacity, as executors and trustees, about 1300 acres of such lands in the immediate district, were called on by one Stitt, who had in part formed and was still cultivating relations with persons in New York and other cities operating in oil lands; and an agreement was made between him and the said Huidekopers that if he, Stitt, brought a purchaser to them for the land, within thirty days, at a fixed price, he was to have a definite

compensation. The time thus limited expired without a sale.

On the 19th—22d of November a new agreement was entered into in regard to the same matter, by which it was agreed that Stitt might sell the land for not less than $40,000; that on this sum being paid to the Huidekopers, he should have out of it as a compensation $2500, and that if he could sell the land for more than $40,000 he should retain the surplus for himself. With a view of enabling Stitt to sell and convey the land with despatch and facility—his business being chiefly with persons who were buying on speculation, and who wished to re-sell *soon* at an advance—the Huidekopers made to him a deed, duly signed and acknowledged, which they placed as an escrow, in the hands of Drake Brothers, their bankers, in New York, to become a valid deed when Stitt should pay $40,000 into the hands of the said Drake Brothers, for the use of them the Huidekopers. Whether there was any limitation of time within which the sum of $40,000 was to be paid to enable Stitt to take up the deed and entitle himself to the compensation, and whether, if there was no limitation of time, there was any other agreement as to an indefinite extension, which would prevent the Huidekopers from recalling the escrow, or the authority to deliver it, so as to render nugatory pending negotiations for a sale by Stitt to third parties, was a matter in dispute.

The escrow being, as already mentioned, in the hands of Drake Brothers, and to be delivered to Stitt on the payment of the $40,000, Stitt, on the 10th of January, 1865, entered into a written contract with Backus & Morse, operators, in New York, in oil lands, by which contract Stitt agreed to sell the lands, *or certain specified portions*, at $55 per acre, to them. Backus & Morse, however, did not agree to buy, but agreed to decide on or before the 14th of January, 1865, whether they would buy, and if so, *how much.* They agreed that if they decided to buy, they would deposit with Drake Brothers, on or before the said 14th, $10,000, which was to be paid to Stitt as soon as the titles were examined and found

perfect, and a deed from Stitt was to be deposited with Drake Brothers, to be held until the balance of the purchase-money was paid or *satisfactorily secured.* The time of payment of the balance was not *to exceed sixty days* from the payment over to the plaintiff of the $10,000. ` Of course if Backus & Morse took the whole 1300 acres, the sum payable would be $71,500; a large gain to Stitt.

On the 14th of January, 1865, Backus & Morse elected, *by parol,* to take. all the lands, and made the deposit with Drake Brothers of $10,000; their election, however, not being according to the contract, but on condition that "*if the balance of the purchase-money is not deposited by the time specified in the contract, the $10,000 is to be forfeited to Mr. Stitt;*" and their election in this form being indorsed by Drake Brothers upon the contract.

On the same 14th of January Stitt wrote to the Huidekopers for an abstract of title. They sent one within two or three days afterwards (apparently from its date, on the 16th), to Drake Brothers, which Stitt saw there, and of which he had a copy made. In the letter of Stitt asking for the abstract, Stitt mentioned the *fact* of a sale, but mentioned no particulars of it whatever, nor the names of the purchasers.

On or about the 19th Stitt mentioned to three different persons, as they testified, that he had made a good sale of the lands, but had transcended his authority; that he was bound to sell strictly for cash, and that the Huidekopers were under no obligations to ratify.

On the 24th of January, 1865—the lands, owing to the discovery of a well called the United States well, having greatly risen and apparently still rising in value, and Stitt not having communicated to the Huidekopers the particulars of his contract with Backus & Morse, nor, so far as appeared, the Huidekopers knowing or suspecting that any such sale had been made as Stitt had effected, the Huidekopers revoked the authority of Stitt. On the 27th of the same month Stitt tendered the money ($40,000) to Drake Brothers and demanded the deed, which, in compliance with

instructions sent to them on the 24th by the Huidekopers, they refused to give up to him.

Hereupon Stitt brought this suit in the court below against the Huidekopers, upon an alleged joint contract by them with him, to recover for services rendered to them, as a real estate broker. The *narr.* contained a special count, that the defendants employed him to sell for them, or negotiate and consummate a sale for them of a body of lands for the price of $40,000, or more, agreeing to pay him $2500 out of the purchase-money, in case he made a sale, and also agreeing to allow him all he might sell the lands for more than $40,000. A *quantum meruit* was added.

On the trial, one point in dispute was whether the new or second contract between Stitt and the Huidekopers—that is to say, the contract of the 19th—22d of November—whether that contract had in it any limitation of time.

Stitt testified that he asked to have a time fixed, during which he might operate, to sell the lands, and that Alfred Huidekoper declined to fix one; stating that it was better for him that no time should be fixed.

On the other hand each of the Huidekopers testified that two papers were drawn up and signed by them both, one fixing the time *until December 1st,* 1864, and the other agreeing to refund to Stitt $2500 if he paid the $40,000, and took up the deed. They each further testified that both papers were given to Stitt. A call was made on Stitt to produce them.

Further on in the trial the plaintiff offered himself as a witness, his testimony to be followed by that of Backus and of Morse—all the parties to the contract—that when the contract of January 10th, 1865, of Stitt with Backus & Morse was made, it was the intention and agreement of the parties to provide in it that the purchase-money should be paid as soon as the titles could reasonably be examined, and that it was a mutual mistake that the language of the contract was not made to express that understanding, and that the omission in the contract of such words as were necessary to clearly express that conclusion was a mutual mistake,

such as ought to be corrected. The court refused to let the evidence go in; and this was ground of one exception.

A matter alleged by the plaintiff and denied by the defendants was, that the defendants had ratified Stitt's sale to Backus & Morse; and to show a ratification the plaintiff offered his *copy* of the abstract of title already spoken of, as having been made by his direction from an admitted original confessedly sent by the Huidekopers to Drake Brothers.

The defendants objected to the admission of the copy, and offered to produce, under a notice which the plaintiff had given, what they alleged to be the original, and thereupon did produce the same. The plaintiff denied that the paper produced was the original, and proposed to prove by himself that the paper was not the original.

To this offer the defendants objected that the original produced on notice was the best and only evidence; that it was not competent to the plaintiff to refuse it on his own allegation that it was not the original, and thereupon, and in its presence, and upon the footing of his own denial to introduce secondary evidence of the paper.

"The defendants being in court and ready to be examined to prove that the paper produced was the original, and the plaintiff declining to examine them, the court sustained the objection and rejected the copy." This, too, was matter of exception.*

---

* It may be here stated that some of the testimony in the case left room for argument by the defendants, if it should be necessary to make it, that the plaintiff had not shown that Alfred Huidekoper, who was stationary at Meadville, had ratified all that his nephew Frederick, who was a good deal in New York, and attended to things there, had done, though no such defence was set up. But the action being on an alleged *joint* contract, where both defendants were liable or neither was, it was necessary to show the knowledge and assent of Alfred. Apparently, to show *this*, Stitt, in giving an account of the transaction generally, stated that he knew Frederick's handwriting, and that the abstract sent to Drake Brothers was not in *it* but in Alfred's. Both the Huidekopers swore that it was not so, but was in Frederick's. The "original" produced by the Huidekopers being in Frederick's, and not sustaining Stitt, he desired when he came to show the confirmation by both parties to have his copy, *with his above-mentioned testimony*, in evidence. As the Reporter understood the case, there was no difference alleged

There was no evidence offered of the value of the plaintiff's services, under the common count, nor any instructions requested on it. On the contrary, the counsel of the defendants (without apparent objection on the other side) requested certain instructions "in view of the *admitted fact* that the plaintiff was not to be paid for either, or to receive *anything* at all unless he sold the lands and paid over the money according to agreement."

Respecting the evidence the court instructed the jury very fully; what follows being extracts from the charge:

"The evidence is for you—its credibility—its consistency—its weight—what it is, and what it proves. If there is a conflict in the testimony, you are to consider it, and when it is impossible to reconcile different statements of witnesses, you are to determine conscientiously, not arbitrarily, which you will believe. You are not to know the parties, or yield at all to what you may have heard respecting the case outside of the jury box. The questions for you are, what does the evidence prove; and under the instructions of the court, what is the law in regard to the facts proven.

"In regard to the arrangement of November 19th—22d, there is a discrepancy between the testimony of the plaintiff and that of the defendants. Mr. Stitt testifies that he asked to have a time fixed during which he might operate to sell the lands, and that Mr. Alfred Huidekoper declined, stating it was better for him no time should be fixed. On the other hand, both the defendants testify that two papers were drawn and signed by them both, one fixing the time until December 1st, and the other agreeing to refund $2500 if the plaintiff took up the deed. These papers, they say, were delivered to the plaintiff. Of this Alfred Huidekoper is positive, and Frederick thinks they were delivered. A call has been made for these papers, and they have not been produced. Were any such papers given? *You should reconcile the testimony, if possible, without imputing falsehood to either affiant. It is a rule of presumptions that ordinarily a witness who testifies to an affirmative is to be preferred to one who testi-*

---

between the two briefs or abstracts; the allegation being only that the one produced was not the "original" that had been sent to Drake Brothers, where Stitt had seen it, and which he had sworn was in Alfred's writing.

*fies to a negative.    Why?    It is because he who testifies to a negative. may have forgotten.    It is possible to forget a thing that did happen. It is not possible to remember a thing that never existed. . . . . .*

" Was there an agreement to allow to Stitt a refusal of the lands indefinitely?    Is this probable, considering the fluctuating value of lands in the oil region?    Did Alfred Huidekoper agree to give such a perpetual or indefinite refusal.    This is a suit upon an alleged joint contract, and both defendants must be liable, or neither is.    The evidence seems to show, though this is for you," &c.

[The learned judge then reviewed the testimony.]

Respecting the law the court charged:

" *If* such papers [those which the Huidekopers had testified were given, one limiting the time for sale till 1st December, 1864] were given—if such was the contract, the plaintiff's right to take up the deed on the payment of $40,000, and his agency to sell the lands for the defendants expired on the 1st of December, 1864; and as his bargain was contingent, he had thereafter no legal claim against the defendants for what he had done, or expended, and no right to act as their agent farther, unless there was a new contract, of which I shall have something to say presently.    But this is not a very important matter.    If you should find there was no such limitation, still the defendants had a legal right to withdraw their deed, and put an end to the agency at any time they chose, without the plaintiff having any legal right to complain.

" Notwithstanding the arrangement of Stitt with Backus & Morse, the Huidekopers had a clear right to withdraw their deed from Drake Brothers or to prohibit its delivery, and refuse to continue the plaintiff's agency.    Further, the defendants were executors, and trustees of the lands.    It was their duty to obtain the highest possible price for them.    When the discovery of the United States Well, or any other thing gave to the property an enhanced price in the market, it was their duty as well as their right, unless they were restrained by some previous contract, to withdraw any refusal they had given, that interfered with their power to make a sale most beneficial to their *cestui que trust.*

" The revocation of the power to deliver the deed, if you be--.

lieve it was made, put an end to the plaintiff's right to take the lands under the special arrangement with the defendants, and in effect terminated his agency. The subsequent tenders, even if made in good faith, and kept alive, were therefore of no effect; and you need not trouble yourselves to consider them.

"Nor is there any evidence of ratification that would justify you in finding that the defendants did ratify the bargain made by the plaintiff with Backus & Morse. Knowledge is essential to ratification. A man cannot be held to ratify that which he does not know. What evidence is there that the defendants were informed of the nature and stipulations of the contract of January 10th, before they revoked the authority of Drake Brothers, if any they ever had, to deliver the deed? It is not pretended that they had any such information. On the 14th of January, Stitt wrote them that he had sold the lands, and that $10,000 were paid. He did not mention the terms of the sale. He did not say it was no sale for cash, or that it was a refusal given to the purchasers without liability on their part to pay the whole purchase-money. He did not say what the price was. He did not name the purchasers. Now if he made the sale as agent of the defendant, his duty was plain. It was to inform them at once of all he had done. Instead of this, you may be of the opinion that he concealed from them what they had a right to know. He gave them no copy of the contract, and they were left uninformed in regard to its contents, until after they concluded to revoke the plaintiff's authority, and resume the control of their deed. Under these circumstances . . . the sending of an abstract of title to Drake Brothers ought not to be treated as an assent to or ratification of an agreement of which the defendants had no particular knowledge, and which it was impossible for them to obtain; especially is this true when he who attempts to show ratification is the person whose duty it was to give the defendants full information, and to furnish them with a copy of the contract he had made while claiming to be acting as their agent.

"You will not overlook the evidence that the plaintiff admitted he had transcended his authority upon this subject.

\*　　　　\*　　　　\*　　　　\*　　　·\*

"The great and controlling question is, whether the plaintiff made such a sale, or rather whether the contract made by him with Backus & Morse was such a sale or negotiation of a sale

as the plaintiff, under his agency for the defendants, as set forth in the declaration and proved here at the trial, had authority to negotiate. If it was not—and I have instructed you that it was not—the defendants had a legal right to refuse to accept it, and to withdraw all authority they had given, and if you believe that they did so, your verdict should be for the defendants."

The jury found accordingly, and judgment was entered on the verdict. Stitt now brought the case here. There were twenty-four assignments of error, and there was the signature of the judge who tried the cause to as many exceptions in the record. There was also, besides these and the pleadings, a confused mass of what were called "judge's notes," " depositions," &c., of which it was impossible to tell whether they were intended to be parts of the bill of exceptions, or on what principle they were to be considered by this court.

*Mr. G. W. Guthrie, with whom were Mr. J. K. Kerr and Mr. E. S. Golden, for the plaintiff in error; Mr. W. D. Davidge, contra.*

Mr. Justice MILLER delivered the opinion of the court.

The argument, as is generally the case when such a transcript as the one in this case comes before us, has been largely made up of controversies as to what the evidence establishes, which was proper for the consideration of the jury but is out of place in a court of errors.

It will not be profitable or necessary to notice all the alleged errors in this decision. Those alone which are decisive of the case will be considered. The remainder may be treated as not well taken or not presented by the record.

One of the errors assigned and insisted on grows out of the conflict in the testimony between the plaintiff and the two defendants, all of whom were sworn as to two papers, which the defendants aver were signed by them and delivered to the plaintiff at the time the escrow was signed, one of which limited the time within which the plaintiff could pay the money and take up the deed to the 1st of December,

and the other agreed to give him $2500 out of the $40,000 so paid. No such papers were produced, and on this point the testimony is conflicting. The plaintiff denies the receipt of any such papers, and both the defendants swear positively to their delivery to plaintiff.

On this subject the court charged the jury "that it is a rule of presumptions that ordinarily a witness who testifies to an affirmative is to be preferred to one who testifies to a negative, because he who testifies to a negative may have forgotten. It is possible to forget a thing that did happen. It is not possible to remember a thing that never existed."

We are of opinion that the charge was a sound exposition of a recognized rule of evidence of frequent application, and that the reason of the rule, as stated in the charge, dispenses with the need of further comment on it here.

Leaving to the jury the question of the existence of this limitation of the contract, the court charged in various shapes that, if there was such a limitation, after its expiration, or, if there was none, then, at any time before the payment of the money, the defendants had a right to withdraw the escrow and terminate the plaintiff's agency without accountability to him.

And this view put forth by the court, which was the turning-point in the case, is the error much insisted on here, and assigned in various forms.

The proposition may be looked upon in two aspects: 1. As regards a sale to plaintiff himself, on his payment of the $40,000. 2. As a contrivance to facilitate his sale of the lands as agent of defendants. In reference to the first, we are of opinion that as no pretence is set up of any payment or offer to pay until some time in January, 1865, long after the time limited, if there was a limitation, the utmost that can be justly claimed against defendants is, that it was an open offer of sale at a given price, which bound them only on its acceptance and compliance with its terms; and that until that was done the offer was within their control, and it was entirely within their power to withdraw it. It would

seem useless to argue such a proposition. But we will mention two considerations which are conclusive:

1. On any other hypothesis, there is a want of consideration in the contract, the defendants being bound for an indefinite period of time to accept the money whenever it might suit the plaintiff to pay it, while he was not bound to pay or abandon the right to pay at any period within any fixed time.  2. That unless the party making such offer could withdraw or terminate it at his pleasure, there would be no means of relieving him from the danger of its acceptance at any length of time after it was made, and under any changes of circumstances which accompanied his offer. And so are the authorities.

If we examine the proposition as one of agency, it is still clearer that unless there was a contract binding the defendants to accept and ratify a sale by the plaintiff for the sum of $40,000 or more, made at any time, they could, before such sale was completed, withdraw and revoke the plaintiff's agency without liability to him on account of the special offer set up by him.

The charges of the court as to the law of this branch of the case, were, therefore, correct.

It is, however, strenuously contended by counsel for the plaintiff, that before the defendants revoked the agent's authority, by ordering Drake Brothers not to deliver the escrow to him, he had made a valid sale within the terms of the offer, which was an acceptance of that offer, and binding on the defendants.

As regards this branch of the case, it is to be remarked that this is not a suit by the supposed purchasers, Backus & Morse, either to enforce specifically that contract of purchase, or to recover damages for its breach. But it is a suit by the agent who negotiated it to recover against the owners of the land what he would have been entitled to if the contract had been carried out. In this view, it is important to remember that if the plaintiff had paid into the hands of Drake Brothers the $40,000 at the time he deposited with

them his written agreement with Backus & Morse, he would have been entitled to a delivery of the escrow, and would probably have received it, and thus prevented all controversy.

As he did not do this, it becomes necessary to inquire what he did that could bind the defendants. The written agreement between Stitt on the one part, and Backus & Morse on the other, is in the record. It is an agreement, in effect, that if Backus & Morse shall elect to buy all or any part of the several tracts of land included in the conveyance in escrow to Stitt, within four days, they may do so at the price of $55 per acre, on depositing with Drake Brothers the sum of $10,000; the remainder to be paid within sixty days after the first deposit. On the last of these four days, it appears by an indorsement made by Drake Brothers on this contract, that Backus & Morse paid in the $10,000 and elected to take the whole of the lands; the $10,000 to be returned if the title was not found to be good, and forfeited to Stitt if the balance of the purchase-money was not paid within the time stipulated.

By the agreement as originally made and signed by Stitt, Backus, and Morse, the latter are bound to nothing. They had an option for four days of all or any part of the land at $55 per acre, and they had sixty days after their election was made to pay the principal part of the purchase-money. By their payment of the $10,000, they placed themselves in relation to Stitt in a position where they could forfeit the $10,000 and thereby release themselves, or pay the balance within sixty days and claim a conveyance of the land. Looking to these papers as the proper evidence of the contract between Stitt, on the one part, and Backus & Morse on the other, it is clear that there was never any obligation on the part of the latter to take the land and pay for it at a definite price; that by forfeiting the $10,000 they could be released from any further performance of that agreement.

This statement of the nature of that contract is sufficient to show that it was no compliance with the outstanding offer of the defendants to Stitt.

They had never offered to accept any such contingent or optional contract of purchase, nor had they agreed to accept of any contract on time. Forty thousand dollars paid into Drake & Brother's hands was the only valid acceptance of their offer which could bind them.

The plaintiff offered to introduce some parol testimony to show that the obligation of Backus & Morse was to take and pay for the land as soon as the title could be examined. This was excluded by the court, and its exclusion is assigned for error. While it is certainly true that in some classes of cases a contract between persons not parties to the suit may, when introduced, be contradicted or varied by parol testimony, the principle can have no application in a case like the present. This was a contract concerning real estate, which the statute required to be in writing to make it valid. And certainly the defendants were not bound to accept such an incomplete contract as binding on them, while its obligatory force as to the other party depended on parol evidence.

We are of opinion that no such contract of sale by Stitt was proved as the defendants were bound to accept before they revoked his agency.

An attempt was made to show that the contract with Backus & Morse was ratified by the defendants, and an abstract of title furnished by them was relied on for this purpose. On motion of the plaintiff's counsel the defendants produced what they claimed to be the original of this abstract. The plaintiff thereupon offered a copy of the abstract, which he insisted was different from the one produced by the defendants and which he wished to introduce. This was overruled. It is a little difficult to understand precisely how all this was done, as the bill of exceptions states that the defendants were ready to verify by their oath the genuineness of the abstract which they produced. At all events it seems to us that the court was right in refusing to admit *in the first instance* what was conceded to be a *copy,* when that which was

at least *primâ facie* the original was in court to answer the notice of the party desiring to use the copy. How far the plaintiff could have been permitted to show a variance of the defendants' paper from the genuine, after it was once introduced, we need not inquire. But a copy could not be introduced until what seemed to be the original had been before the court and become the subject of inspection by the jury.

It has been urged that the court invaded the province of the jury by giving instructions which left them no alternative but to find for the defendants. It may be true that, under the charge of the court, they could do nothing else. But a careful examination of the whole charge, which is before us, shows that the court left the credibility of the witnesses, and all disputed facts, to the jury, and based its instructions to find for the defendants on their belief of propositions which required such a verdict. This objection is largely based upon the argument that the jury might have found for the plaintiff a reasonable compensation for his services on the common count, but to this it is a sufficient answer to say that no testimony was offered of the value of the services rendered under this count, nor any instructions asked of the court on that count, and that through the whole trial plaintiff insisted on his special contract, and *that alone*, as the ground of his recovery.

We see no error in the record, and the judgment of the Circuit Court is

AFFIRMED.