CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY vs HUGGINS.

Opinion delivered September 25, 1902.

1. *Negligence—Railroads—Killing Stock—Evidence.*

In an action against a railroad company for killing stock on the track plaintiff's evidence only showed that the cattle were found near the track one morning, supposedly struck and killed during the night, at a point where the track was straight in each direction for a distance of over a quarter of a mile; while the defendant's evidence showed that the engineer, keeping a close watch, while running at 40 miles an hour, saw the cattle about 200 feet ahead, that the train could not have been stopped in that distance and to have slowed it down would have been dangerous to his passengers; *Held,* no sufficient evidence of negligence of the defendant and a verdict for defendant should have been directed.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by J. L. Huggins against the Chicago, Rock Island
& Pacific Railway Company to recover for cattle killed by de-
fendant's train. Judgment for plaintiff. Defendant appeals.
Reversed.

The plaintiff below (appellee here) began suit against the
Chicago, Rock Island & Pacific Railway Company, appellant,
before H. M. Wolverton, United States commissioner at Ryan,
Ind. Ter., on July 3, 1896, for killing two three year old steers by
a train near Addington, Ind. Ter., and claimed damages in the sum
of $60. Summons was issued against the defendant, and served
June 27, 1898, and the cause was heard in the commissioner's
court on the 19th of July of the same year. The plaintiff,
Huggins, filed a complaint claiming damages to the amount of
$60 against defendant for the killing of two steers through the
negligent operation of defendant's train. Before proceeding to
trial the defendant filed a motion in the commissioner's court to
have the plaintiff make his complaint more specific. The plain-
tiff amended, averring that the killing of the steers was occasioned
by negligence on the part of the defendant in the operation of its
train. The defendant answered, and admitted the value of the
cattle and the killing, but denied that there was any negligence
on the part of the defendant or its agents. The case was tried
before a jury, and resulted in a verdict in favor of the plaintiff
for $60 damages. An appeal was taken by the railway company
to the United States Court for the Southern District of the In-
dian Territory at Ryan, and on the 24th of February, 1899, the
case was called for trial; whereupon the defendant company filed
the following motion: "Comes now said defendant and moves
the court to require plaintiff to file in the above-entitled cause a
complaint stating therein what wrongful or negligent or otherwise
acts it is claimed the defendant was guilty of in the alleged killing

of the steers in question, and that plaintiff be required to make his claim more definite and certain by alleging in said complaint what said alleged negligent, wrongful, or otherwise acts of the defendant consisted of; and, if negligence in the operation of the defendant's trains, or any of them, is claimed, then that plaintiff be required to give the number of the train, the number of the engine, the direction in which the same was running, the hour of the day which it is claimed said alleged damages occurred,—for the reason that, without said allegations, averments, and information, defendant is unable, and will be unable, to prepare its defense to said action." Thereupon the plaintiff, through his attorney, stated that he would comply with said motion by an oral statement, and thereupon proceeded to make the following statement, to wit: "That said steers were killed by the negligence of the railway company; that there was a straight track there for some distance, and that the engineer saw the cattle, or had opportunity to see them, in time to have slackened his speed, or to have stopped his train, and prevented killing them. Furthermore, that he saw the steers in time to give them signal,—blow his whistle or ring his bell,—to have scared them off the track, but he made no effort whatever to prevent the killing." And thereupon the defendant made the following admission: "That the two steers were killed at the time and place alleged, but denies that it was through any negligence of the company or any of its employes; that the steers got upon the track in the night-time; that the train was running at a speed of forty miles per hour, and when the cattle were observed on the track it was too late to avoid striking them. They were stricken under those circumstances, and without any fault upon the part of the defendant company or its agents." Upon the trial of the cause the plaintiff produced but one witness, Mr. Addington, who testified that he knew nothing about the suit, only that the two steers were supposed to be killed by the train; that they were laying on the right of way of the railroad near the track; that he saw them just after

they were dragged off; that it was along the first days of July, 1896; that he saw hair and blood on the end of the rail; that he only examined the cattle sufficient to see the brand upon them, and that they belonged to J. L. Huggins, and were worth $28 or $30 apiece; that the track was level and straight something over a quarter of a mile north and a half to three-quarters of a mile south, and supposed that cattle could be seen on the track at night with the headlight of an engine about two telegraph poles, and that the telegraph poles are something near 200 feet apart; and that he knew nothing about the killing of the animals, as he was asleep.   This was all of the testimony offered by the plaintiff in the case.   The defendant then introduced N. H. Brooks, who testified: "I am an engineer for the Rock Island Railroad Company, and was the engineer upon the passenger train which struck the cattle in question, and had four coaches.   The cattle were struck at 12:35 a. m., while the train was running at a speed of forty miles per hour.   When the cattle were struck, I was sitting on the engine seat looking ahead.   They were about two hundred feet away, standing on the track, when I first saw them. It was a dark night.   The headlight on the engine was in good working order, and was such as is usually used by railway companies, being a standard headlight.   I have had in the neighborhood of fifteen years' experience as an engineer.   Q.   How long had you been watching down the track at the time when you saw them?   A.   Well, I really was continually watching, you might say.   Q.   How far can an engineer ordinarily see creatures of that kind on the track in the night when the engine is going at a speed of forty miles an hour and the headlight is burning brightly A.   Just about two hundred feet you can tell what they are,— distinguish an animal.   When I first saw them, I did nothing. In going at that speed on such a track with such a train the train could be stopped in about eight hundred feet.   Q.   Have you calculated the time it takes, going at the rate of forty miles an hour, to cover two hundred feet?   A.   Yes, sir; it takes three

seconds and a half. Q. Now what is the effect, or what is ordinarily the result, of a train moving at a speed of from thirty to forty miles an hour that strikes an animal standing on the track that way? Does it throw it off? A. Yes, sir; it throws it off. Q. Now, if you had succeeded in reducing the speed to ten or fifteen miles an hour, what would have been the probable effect on the train? A. Well, there have been accidents of that kind that resulted in ditching the train. Q. What is ordinarily the usual results of reducing the speed of the train to such a speed as that,—say ten or fifteen miles an hour,—and striking animals on the track? A. Well, it is not safe to do it. Q. You may tell the jury why it is not safe. A. In striking an animal slow that way you simply strike them hard enough to roll them up on the pilot, and when they get up there they roll back on the track immediately in front of the engine, and the engine will go over them, and result in throwing the wheels off the track. Q. Have you had experience of that kind? A. Yes, sir. Q. How many times? A. Three wrecks on the Rock Island inside of the last four years. Q. Is it regarded as safe to slow up your engine, in pulling a passenger train, when it is apparent that you will be unable to stop it before reaching an animal on the track? A. No, sir; it is not. Q. You say that it would have been impossible, at the time that those animals became visible, to have stopped the train, and avoided striking them hard enough to kill them? A. Yes, sir; it would have been. The telegraph poles along the Rock Island track are one hundred and fifty feet apart." On cross-examination by attorney for plaintiff, Huggins, the witness, was asked: "Q. Were you keeping a lookout that night constantly,—the night those steers were killed? A. Yes, sir." No other witnesses were examined. Upon the conclusion of the testimony the defendant's attorney submitted to the court a written instruction, as follows: "You are instructed that the plaintiff has failed to prove that the cattle described in his complaint were

killed through any negligence of the defendant, and your verdict should be for the defendant." The court refused to give this instruction, and the defendant, by its counsel, excepted. The court instructed the jury, and counsel for defendant excepted to the giving of each and every of the instructions so given. There was a verdict for the plaintiff, and damages at $56. On the 25th of February, 1899, there was a motion by defendant for a new trial upon the following grounds: "First. That the verdict is contrary to the law, and is not supported by the evidence. Second. Error of the law occurring at the trial, and excepted to by the defendant, to wit, the refusal of the court to instruct the jury to return a verdict for the defendant, and the giving of the following instructions to the jury (setting out all of the instructions given by the court.") The motion for a new trial was heard and overruled, exception taken, and judgment was given on verdict. An appeal was prayed and granted, and 60 days given in which to file a bill of exceptions, which was filed within the time.

*M. A. Low, W. F. Evans*, and *C. O. Blake*, for appellant.

*Dunn & Jones*, for appellee.

RAYMOND, J. In order that plaintiff may recover in this kind of an action, there must not only be proof of the killing of the stock, but that the killing resulted from the lack of ordinary care on the part of the servants of the railway company. If there is no negligence, there is no liability. Proof of the killing of the stock is not sufficient. The plaintiff must go further. He must aver and prove negligence on the part of the railroad company. "The burden of proof is on him who complains of negligence." Pol. Torts, p. 545. "Negligence in the management and running of a train is not made out by proof of the killing of stock by it." Railroad Co. vs Patchin, 16 Ill. 198; 61 Am. Dec. 65; Railroad Co. vs Morthland, 30 Ill. 451; Railroad vs

Utley, 38 Ill. 410; Railroad Co. vs Whalen, 42 Ill. 396; Railway Co. vs Barrie, 55 Ill. 226; Railroad Co. vs Lynch, 67 Ill. 149. "The omission to ring a bell or sound a whistle does not render a railroad company liable for an injury to animals, unless it is made to appear that such signal would have prevented the injury." Railroad Co. vs Phelps, 29 Ill. 447; Railway Co. vs Jones, 76 Ill. 311. "The weight of authority is to the effect that a plaintiff who is seeking to recover for animals injured on a railway track must not only show the omission of signals, but must show that such omission was the cause of the injury." Elliott, R. R. § 1206. In the case of Holman vs Railroad Co., 62 Mo. 562, the Supreme Court of Missouri held that, when it is alleged that the stock was killed by a train of cars at a point where the law requires signals to be given, the testimony must show or tend to show that the failure to give the statutory signals caused the accident; and that, where the only proof in such a case was that the animal was killed at a public crossing by a train, and that no signals were given as required by law, it is the duty of a court to direct a verdict for the defendant. In Railroad Co. vs Phelps, 29 Ill. 447, the court said: "The statute requires railroad companies to ring a bell or sound a whistle at all road crossings, and on default they are made liable to a penalty of fifty dollars and for all damages sustained by reason of such neglect. No witness could state that this injury resulted in consequence of a failure to ring the bell or sound the whistle. The injury did not occur at a road or street crossing, and it must be inferred that a failure to ring the bell or sound the whistle at the street crossing, did not produce the injury, unless by doing so it would have prevented the animal from attempitng to cross the road as it did. And, as one of the witnesses stated, no person could tell what a horse would have done if the bell had been rung or the whistle had been sounded. We think there was a total failure of evidence to prove, or evidence that even tended to prove, that the injury was the result of the failure."

In Railroad Co. vs Linn, 67 Ill. 109, the point decided is stated
in the syllabus as follows:  "While the statute imposes a penalty
on a railroad company for a mere omission to comply with its
requirements, more is required to create a liability for injury to
person or property.  In the latter case, when no other negligence
is proved, the injury must be by reason of the neglect to ring a
bell or sound a whistle, and the proof must show that it was the
probable result of the omission."  In course of the opinion the
court said:  "The statute imposes a penalty upon corporations
for the mere omission to comply with its requirements; but
more is required to create a liability for injury to persons or pro-
perty.  In the latter case the injury must be by reason of the
negligence.  The proof must show that it was the probable re-
sult of the omission.  In this case it is not a reasonable pre-
sumption that the mare was killed in consequence of the neglect
to ring the bell or sound the whistle.  There is not even a strong
suspicion created."  In Vallance vs Railroad Co. (C. C.) 55 Fed.
364, the court said:  "The only evidence tending to show that
the failure to ring the bell or sound the whistle contributed to the
injury was such as could reasonably be inferred from the pre-
sence of the child at or near the crossing with injuries of the
character described.  In order to entitle the plaintiff to recover
upon this ground, the jury were instructed that they must find
from the situation that the omission to ring the bell or sound the
whistle contributed to the injury.  There was no evidence that
the child was precocious, or that it had been warned that a rail-
way whistle or bell was a signal of danger .  Therefore, upon
the conceded facts on this branch of the case, the finding of
the material and necessary fact that the failure to whistle or ring
the bell contributed to the injury in any way is against the
weight of the evidence, and an inference or deduction so un-
reasonable as to compel the conclusion that the jury were con-
trolled by prejudice."  "It is a matter of common knowledge
that the Indian Territory is a grazing country, where cattle in

great numbers run at large. The owners of cattle are not bound to fence them up, and the railroad company is not bound to fence them out." Railroad Co. vs Washington, 1 C. C. A. 286, 49 Fed. 347. "Where a domestic animal running at large by the sufferance of the owner gets upon a railroad track at the crossing of a highway where the company is not required to fence, and is killed by a passing train, the company will not, in general, be liable, unless its servants, after they discovered the animal, might, by the exercise of proper care and prudence, have prevented the injury." Railway Co. vs Barlow, 71 Ill. 640. "Where stock are killed or injured within a city, town, or village in Illinois where a railroad is not required to fence, there can be no recovery had by the owner without the averment in declaration and proof that the servants of the company were guilty of negligence in running its trains." Railroad Co. vs Barton, 80 Ill. 72. "Where a railway company is under no statutory liability for injury to stock by its trains by reason of its road not having been fenced, the only ground of liability will be that the injury might have been avoided by the exercise of ordinary care and prudence, and that its servants in charge failed to exercise such care and prudence." Railroad Co. vs Spencer, 76 Ill. 192. "A railway company is never authorized to diminish the speed of its trains in order to avoid injury to cattle on the track, if, by so doing, it augments the danger to passengers." Wood, R. R. p. 1851. "In the absence of statutory enactments regulating the speed of railway trains, railway companies may run their trains at any rate of speed which may best suit their convenience. They are not bound to run at a slower rate of speed because animals may get upon the track and may receive injuries by reason of such high rate of speed. Railway companies being engaged in the business of conveying passengers and property, and that business being regarded of the highest importance, the speed of trains may be regulated with that end in view. The slight private interest which may exist

because of danger of injury to animals straying upon the track must give way to the greater interests which exist in favor of the public. No rate of speed is negligence per se. * * * Where animals are discovered upon the track, the engineer is ordinarily bound to exercise some degree of care to prevent injuring them, if such care can be exercised consistent with the safety of the train or its passengers. If danger would likely result to the train or its passengers from an effort to stop or slacken the speed of the train, there is no obligation to stop or slacken the speed; for the safety of the train and its passengers is of the highest importance, and takes precedence over the safety of animals on the track; and an engineer will be justified in increasing the speed of his train, so as to throw animals away from the track, where such a course will secure the greatest safety for the train and the property and passengers being carried thereon. * * * And where it appears that an effort to slacken the speed would not avoid the collision with the animals, the company is excused from making the effort." 3 Elliott, R. R. p. 1850, § 1204.

If there is no proof of negligence, the court should instruct the jury to find for the defendant. We are of opinion that there is no proof of negligence upon the part of the railroad company. In fact, the testimony of the engineer in charge of the train negatives the charge of negligence, and the plaintiff offers no evidence to support his contention that the stock was killed through the negligence of the defendant company. The court is of the opinion that the peremptory instruction asked for by the defendant in the court below should have been given.

Reversed and remanded.