MISSOURI, K. & T. RY. CO. vs McCOY, ET AL.

Opinion rendered Sept. 26, 1907.

(104 S. W. Rep. 620).

1. *Railroads—Injuries to Animals—Liability of Railroad.*

To recover for the killing of cattle by a railroad on its track, the owner must not only show that the animal was killed but that it was the result of the negligent act of the railroad.

2. *Evidence—Evidence Positive and Negative.*

Ordinarily a witness testifying in the affirmative is given credence in preference to one who testifies in the negative.

3. *Injuries to Animals on Track—Sufficiency of Evidence.*

Evidence in an action for the killing of cattle on defendant's track is held insufficient to cause defendant's negligence to be submitted to the jury.

Error to the United States Court for the Northern District of the Indian Territory; before Justice Luman F. Parker, Jr., May 5, 1906.

Action by John W. McCoy and another for killing plaintiffs' cattle against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

On the 8th day of February, 1906, plaintiffs below, defendants in error here, filed their complaint against defendant below, plaintiff in error here, and alleged: That they are citizens of the Cherokee Nation, and the defendant is a corporation; that on the 14th day of November, 1905, defendant was engaged in operating its railroad with steam locomotives and passenger cars; that on same day plaintiffs were the owners and in possession of eight head of cattle, as follows, one black with white face five year old steer, three red four year old steers, three red and white four year old steers, one red and white three year old steer, all branded with the figure 7 on the right

hip, and also on the right side, and of the value of $300; that on said date, through no fault or neglect on the part of said plaintiffs or either of them, the above-described steers strayed upon the railway track of the defendant, and were standing on said railway track at a point where a public highway crosses said railway four miles south of Pryor creek, Ind. Ter., which crossing was opened across said track by said defendant for public travel and convenience; that at said time and place, while said steers were standing upon said track and upon said public crossing, said defendant, by its certain officers, agents, servants, and employes then and there having the care, government, control, and direction thereof, for said defendant, disregarding their duty in this behalf, negligently and carelessly drove, directed, managed, and operated the steam locomotive and passenger cars thereto attached, belonging to and owned by said defendant, at a great speed, against, upon, and over said steers, while so standing upon said railway track and upon said public crossing as aforesaid, and thereby and by reason of said negligence and careless driving, directing, managing, and operating of said steam locomotive and passenger cars thereto attached, its officers, agents, servants, and employes, against, upon, and over said steers, seven of said steers were killed, being the said black with white face five year old steer, the said three red four year old steers, and the said three red and white four year old steers, and so crippled, mangled, and injured said red and white three year old steer that it soon thereafter died from said injuries so received by it; that said locomotive and passenger cars composed what was designated by said defendant as train No. 5; that by reason of the negligent, careless, and unskillful management and operation of said train, and its officers, agents, servants, and employes, from no fault or neglect on the part of the said plaintiffs or either of them, seven of the said steers were killed, and one so crippled, mangled, and injured that it soon thereafter died

from the injuries so received by it, and all were rendered worthless and of no value to these plaintiffs; and they were thereby and they are damages in the sum of $300, wherefore they sue. On February 19, 1906, defendant filed its answer, specifically denying each and every allegation of the plaintiff's complaint. On May 5, 1906, the case was tried before a jury, who returned the following verdict: "We, the jury, duly impaneled and sworn to try the issues in the above-entitled cause, find from the law and the evidence the issues in favor of plaintiffs, and assess their damages at two hundred dollars. Ed. Gwartney, Foreman." Upon the same day defendant files its motion for a new trial, as follows: "(1) Because the verdict of the jury is contrary to law. (2) Because the verdict of the jury is contrary to the evidence. (3) Because the verdict is excessive. (4) Because the court erred in admitting testimony over defendant's objection, as shown by the record, and to which ruling of the court defendant at the time excepted and still excepts. (5) Because the court erred in refusing to admit testimony, offered by defendant as shown by the record, to which ruling of the court the defendant at the time excepted and still excepts. (6) Because the court erred in refusing defendant's request to instruct the jury to return a verdict for the defendant, to which action of the court defendant at the time excepted and still excepts." Which said motion was by the court overruled, to which ruling of the court defendant excepted. Thereupon the court rendered judgment upon the verdict of the jury. Defendant was allowed 60 days to file bill of exceptions, and the case was brought to this court by writ of error.

*Clifford L. Jackson*, for plaintiff in error.

*Nev Campbell*, for defendants in error.

TOWNSEND, J. (after stating the facts as above). Plaintiff in error has filed three specifications of error, as follows: "(1) The trial court erred in admitting testimony in the direct

examination of the witness John McCoy, Jr., over the objection and exception of plaintiff in error, as follows: 'Q. Did the train whistle as it passed that post that day? A. No, sir. Mr. Graves: We object and ask that the court withdraw from the jury the testimony of this witness as to whether or not the train whistled at that whistling post, for the reason that there is no statute requiring trains to whistle at any crossing in Indian Territory. The Court: There may be no statute or law requiring it, yet the proximity of the whistling post referred to, to the place where the accident occurred, is such that the failure of the company to whistle or sound a bell may be a circumstance tending to show negligence, if proven. Objection overruled. Mr. Graves: We except.' (2) The trial court erred in refusing to instruct the jury to return a verdict for the plaintiff in error, as requested by the plaintiff in error. (3) The trial court erred in overruling plaintiff in error's motion for a new trial.'' The plaintiff in error presents only one question: That "the trial court erred in refusing to instruct the jury to return a verdict for plaintiff in error, and erred in overruling the motion for a new trial''—being the second and third specifications of error. The plaintiff in error says it "desires to submit this case upon the broad proposition that there was no negligence whatsoever even in an infinitesimal degree, in this case, and there was nothing in the case to submit to a jury, and the trial court therefore erred in refusing to direct a verdict for plaintiff in error as requested.''

In examining the testimony, the first witness for the defendant in error was Minnie Cox, who stated she was living within about 200 yards of the Missouri, Kansas & Texas right of way fence. Between 10 and 11 o'clock she saw some cattle standing upon that road crossing, part on the railroad track and part on each side. She was just starting to the home of her sister. That it was about a half a quarter from her house to her sister's house. "At about 10 minutes after I

left home I was standing at my sister's house in the yard, facing the railroad, when the train struck the cattle. My attention was called to the accident by two short whistles of the train, and when I looked the train was right on the cattle. I heard no whistle or noise of any kind prior to that. After the train struck the cattle, it ran a little over its length and stopped and backed a little. As I went to my sister's house, I got closer to the railroad and farther from the crossing. I never saw the train before it whistled. After I heard the whistle, I guess it was between 10 and 15 minutes until the cattle were struck by the train. I saw the cattle about the time I saw the train." Nannie Edwards testified for the defendant in error: "I was in my back yard with my sister, Minnie Cox, and my husband, Wash Edwards, about 11 o'clock. The train was right at the crossing when I first saw it. I did not see the cattle on the crossing until the train struck them. I saw both the train and the cattle about the same time. It whistled twice after it struck the cattle. I did not hear any whistle or ringing of bells or blowing off of steam before it struck the cattle. The whistling post on the south side of the crossing is about 200 yards northeast of our house." G. W. Edwards testified for the defendant in error: "I was in the yard when the Katy Flyer struck these cattle about 11 o'clock. I saw the train just before the accident 50 or 60 yards north of the crossing, and at that time I saw a bunch of cattle standing perfectly still on the crossing. The train appeared to be going a little faster than it usually runs. I didn't hear any noise at all until it struck the cattle. Did not hear the bell rung or steam blowing off. When I first saw the cattle, they were standing on top of the railroad crossing, and the train was then about 50 or 60 yards from them. There were just two short whistles when it struck the cattle. It ran about 100 yards, or about its length, after it struck the cattle, before it stopped." Joe Willoughby, a witness for

defendant in error, testified: "I was gathering corn on the west side of the railroad, a little over a quarter north of the crossing, about 200 or 300 yards northwest of the whistling post. I saw the train the day it killed these cattle. It did not whistle at the post. I never heard it whistle that time. I was pulling corn and looked around when the train passed. I was about 300 yards from the whistling post. It is about a quarter from the whistling post to the crossing." John McCoy, Jr., testified for the defendant in error: "I was gatherr ing corn about 200 or 300 yards west of the railway track with Joe Willoughby the day of this accident. There was a whistling post about 200 or 300 yards away, and there was a railroad crossing about half a mile. The train did not whistle as it passed the post that day, and the bell did not ring. My attention was called to the train as it passed by. It was quite a long ways north of the whistling post when I first saw it. I was watching to see if it whistled."

J. W. Emery testified for plaintiff in error: "Been a locomotive fireman for seven years; fireman on the train that struck these cattle, on the public road crossing. I had just put in a fire after we got to the top of the hill, and then stepped to the gangway and looked out and saw the cattle about 300 feet ahead of the train. I hollered to the engineer to look out for the cattle, and at the same moment he applied the air and slowed down, so we were going about 15 or 20 miles per hour when we hit them. There is a dump at the crossing about 5 feet high, and it is upgrade slightly each way from the crossing. The whistle was blown and the bell rung when the cattle were discovered on the track. The bell was rung by air, and I think the whistle was sounded at the whistling post north of the crossing. The engine was about 300 feet from the cattle when the alarm was given. The first cattle I saw came on the track from the west. They came with a rush, and I could not see them until they got on the track.

I supposed some one was driving them. We were making about 40 miles per hour. The train was equipped with all the modern appliances. The cattle I first saw on the track were not touched by the engine, but passed over. The others kept on coming. My position on the engine was on the east-side going south. It is the engineer's duty to blow the whistle at the whistling post and to ring the bell. The train run about eight car lengths after striking the cattle, which was a little over its length. I have a clear and distinct recollection that the engineer blowed the cattle alarm and rung the bell. The whistle could easily be heard a quarter of a mile." J. B. Hotchkiss testified for plaintiff in error: "I am a locomotive engineer in the employ of the railway company. Been in their employ in that capacity for over 27 years. I was engineer on the train when the cattle in question were killed. I sounded the whistle for the road crossing, and saw a bunch of cattle on the right-hand side of the crossing, just inside of the inclosure on the west side. Some of them went on the outside of the inclosure, and after I whistled I started the bell ringing by air. By inclosure I mean the mouth of the lane made by the company's right of way fence at the crossing. I immediately applied the air, shut off the engine, and blew the stock alarm. I struck seven head. I think we were running about 40 miles per hour. I first saw the cattle before I whistled for the crossing. They were standing still within about 50 feet of the track. I stopped, the train in about 700 or 725 feet. It would have been impossible with safety to myself and passengers to have avoided hitting the cattle. I applied the air in emergency. That is everything we can do. I did this when I saw the cattle start for the track. I was just about 300 or 400 feet from them. I left it on until I struck the cattle. I whistled at the whistling post 80 rods from the crossing. I saw the cattle standing at the side of the track at that time. After whistling at the post I started the bell ringing and sounded the

cattle alarm when I first saw the cattle start for the track. I was Eoing about 12 miles per hour when I struck the cattle. You can hear the cattle alarm a half mile on such a day as this was." On redirect examination he stated: "I expect I was going 40 miles per hour from the time I first saw the cattle until we arrived at the point where they came on the track. This would be about 40 feet per second." This was all the testimony in the case.

In order for the plaintiff to recover, two facts must be established: First, that he has been damaged by the killing of his cattle; and, second, that it was done by the negligent act of the defendant, its officers, agents, or employes. In Stitt vs Huidekopers, 17 Wall. 384, on page 394 (21 L. Ed. 644), the court below said: "It is a rule of presumptions that ordinarily a witness who testifies to an affirmative is to be preferred to one who testifies to a negative, because he who testifies to a negative may have forgotten. It is possible to forget a thing that did happen. It is not possible to remember a thing that never existed." And Justice Miller, delivering the opinion of the Supreme Court, said: "We are of opinion that the charge was a sound exposition of a recognized rule of evidence of frequent application, and that the reason of the rule, as stated in the charge, dispenses with the need of further comment on it here." In Horn vs B. & O. R. Co., 54 Fed. 301, 4 C. C. A. 346 in which a controversy existed as to whether the whistle of a certain locomotive was sounded or not, some of the witnesses testified that it was sounded, and some that it was not, and the court said: "In the very nature of things, their affirmative testimony that the warning was given must be accepted as proof of that fact, notwithstanding an equal or greater number of witnesses failed to notice it, from whateever cause. There is in such cases no conflict of evidence as to the matter in question. The observation of the fact by some is entirely consistent with the failure

of others to observe it, or their forgetfulness of its occurrence. Accepting, therefore, as an established fact, that the whistle was sounded, and was heard by the deceased, and yet he persisted in attempting to cross the track ahead of the train, there can be no doubt that he should be held to be the author of his own misfortune." In a case decided by this court (St. Louis & S. F. Ry. Co. vs Zachary, 2 Ind. Ter. 536, 53 S. W. 327) the court said: "There is nothing in the evidence in this case which establishes negiigence on the part of the railroad company. It was error to refuse the motion to direct a verdict." In Chicago, R. I. & P. Ry. Co. vs Huggins, 4 Ind. Ter. 194, 69 S. W. 845, in which the opinion was rendered by Chief Justice Raymond, the court said: "In order that the plaintiff may recover in this kind of an action, there must not only be proof of the killing of the stock, but that the killing resulted from the lack of ordinary care on the part of the servants of the railway company. If there is no negligence, there is no liability. Proof of the killing of the stock is not sufficient. The plaintiff must go further. He must aver and prove negligence on the part of the railroad company.    *    *    * If there is no proof of negligence, the court should instruct the jury to find for the defendant. We are of opinion that there is no proof of negligence upon the part of the railroad company. In fact, the testimony of the engineer in charge of the train negatives the charge of negligence, and the plaintiff offers no evidence to support his contention that the stock was killed through the negligence of the defendant company. The court is of the opinion that the peremptory instruction asked for by the defendant in the court below should have been given."

In this case the only evidence upon the part of the defendant in error is that the witnesses for the defendant in error did not hear the sounding of the whistle, though their attention was not directed to the matter at all until the whistle

was blown, which they said was when the train was very near the cattle. The two witnesses in the cornfield did not hear the whistle. They were pulling corn. The testimony of the engineer and fireman is absolutely conclusive upon that point that the whistle was sounded and the bell rung, and that all the steps that could be taken were taken to avoid the killing of the stock. In our judgment there was no proof of negligence on the part of the plaintiff in error or its employes, but the burden of proof was upon the defendant in error to establish negligence before any recovery could be had.

We think therefore that the court below should have instructed a verdict for the defendant, and the case is reversed and remanded.

GILL, C. J., and CLAYTON and LAWRENCE, JJ., concur.