KARSTEADT, Respondent, vs. PHILLIP GROSS HARDWARE & SUPPLY COMPANY, Appellant.

*November 11—December 5, 1922.*

*Negligence: Failure of demonstrator of machine to warn of possible dangers: Duty of seller: Contributory negligence: Questions for jury: Excessive damages: Arm caught in machine gears.*

1. Conflicting evidence as to whether the gears of a wringer on an electric washing machine were guarded when the machine was being demonstrated by the seller's representative is *held* to make a jury question and to support a finding for plaintiff, whose arm was caught in the uncovered gears.

2. Whether there was a sale of the machine or only a delivery on trial, the seller was under no legal obligation to send a demonstrator unless it agreed or voluntarily assumed so to do; but where the seller undertook the responsibility of giving

Karsteadt v. Phillip Gross H. & S. Co. 179 Wis. 110.

instructions as to its proper use and how to avoid the dangers incident to its use, a demonstrator sent for this purpose by it was its agent, and if she was guilty of a want of ordinary care her negligence was its negligence.

3. When the seller of the machine, intended for use by all tenants of an apartment house, undertook to inform a tenant's employee as to the mode of using it, it assumed the responsibility of giving such information as was reasonably necessary for that purpose.

4. Such employee, whose arm was injured by the gears of the wringer on the machine, being unfamiliar with such machines, their gearing and machinery, and never having seen the particular machine until demonstrated by the seller's representative, and having been warned of certain dangers but not of that causing the injury, it was a question for the jury whether she was guilty of contributory negligence in reaching over the wringer to push back the clothes.

5. Where plaintiff's arm was so caught in the gears of the wringer as to require about fifteen minutes to extricate it and was badly mangled and the flesh torn, and a number of skin-grafting operations were performed but an irregular and disfiguring scar remained, and there was no very satisfactory evidence of lessened earning capacity, but plaintiff had lost $56 in wages and spent $245.25 for physician's and hospital bills, a verdict for $7,200, reduced by the trial court to $3,500, is still excessive to the extent of $1,000.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Modified and affirmed.*

Action to recover for personal injuries sustained by plaintiff as a result of her arm being caught in the uncovered gears of a wringer attached to an electric washing machine.

The complaint alleged, in substance, that the employer of plaintiff bought an electric washing machine in October, 1920; that neither plaintiff nor her employer was familiar with washing machines and neither knew that there was any danger incidental to operating one nor that any guards or protectors were necessary; that defendant knew, "or in the exercise of ordinary care ought to have known, that it was dangerous to operate said machine without a guard and that warning was necessary;" but that defendant in

demonstrating the machine failed to state that any guards were necessary or that it was dangerous to operate the machine without a guard. The complaint further alleged that within a few days after the delivery of the machine, while plaintiff was operating it, the sleeve of her dress caught in the unguarded cog-wheels of the wringer and caused her arm to be drawn into the mechanism in such a manner as to tear the flesh of her left arm and necessitate an operation and her care in a hospital for five weeks; and that as a result of the shock and pain plaintiff had suffered damage to the extent of $8,000.

Defendant admitted the sale and delivery and alleged that no warning was given for the reason that the cog-wheels were adequately guarded when the machine was delivered and demonstrated, and that if they were unguarded at the time of the accident the guard had been removed by some one not employed by defendant.

It appears that the machine in question was known as a demonstrator machine and was not sold as new; that employees of defendant took it from the warehouse and got it ready for delivery in response to a "rush" order; and that it was set up in the laundry room of a six-apartment building which was used by all the tenants.

Plaintiff was not familiar with electric washing machines. She watched the demonstrator and was warned to be careful not to get her fingers or hair in the rollers. On two occasions she used the machine without accident. On the third, as she reached over the wringer to push the clothes back, the sleeve of her dress caught in the cog-wheels and her arm was drawn into the mechanism, causing an injury extending from the middle of the upper arm to the shoulder. She shut off the power and the janitor extricated her by breaking the wringer. It appears that she underwent a skin-grafting operation and was cared for in the hospital for about five weeks. She then went to the home of her employer and stayed there four or five weeks before she did any work.

In a special verdict the jury found that the gears of the wringer were not covered by a guard when the machine was delivered; that the defendant was guilty of a want of ordinary care in so delivering the machine; that the failure to cover the gears was the proximate cause of plaintiff's injuries; that the gears were not covered by a guard when the machine was demonstrated to plaintiff's employer; that at that time the employee in charge of the demonstration should, in the exercise of ordinary care, have known that the gears were not covered by a guard; that the fact that they were not so covered at the time of the demonstration was a proximate cause of plaintiff's injuries; that plaintiff was not guilty of any want of ordinary care; and that the plaintiff's damages amounted to $7,200.

The usual motions were made by counsel for both parties and denied by the court, except that unless plaintiff should consent to take $3,500 as damages a new trial should be ordered. Plaintiff elected to take that amount, and judgment was ordered accordingly.

For the appellant there was a brief by *N. L. Baker & W. J. Zimmers* of Milwaukee, and oral argument by *Mr. Baker*.

For the respondent there was a brief by *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *Edwin J. Gross*.

JONES, J.  If the decision in this case depended upon the finding of the jury that the gears and cogs of the machine were not covered when it was delivered it would be very doubtful whether the finding could be sustained. Several witnesses produced by defendant testified positively and in detail that on delivery the cogs were properly guarded in the usual manner. The evidence to the contrary is purely circumstantial and very meager indeed.

The finding of the jury that the machine was unguarded when it was demonstrated rests on quite a different basis. The testimony of Mrs. Karger, employer of the plaintiff,

was too uncertain on that subject to have much weight. Mrs. Hamilton, who lived in the same apartment building, was present when the demonstration was made. She testified that the gear was not covered and that she asked the demonstrator, Mrs. O'Driscoll, why there was not something on the gear and was told that it was a demonstrator and that on all new machines everything was on. The husband of Mrs. Hamilton, who was the janitor of the building, swore that his wife called attention to the machine and he saw that the guard was off and the gears exposed; that there had been a guard on was indicated by the screw holes, and that it looked like an old removal. Mrs. O'Driscoll, the agent of defendant, swore positively that the machine was properly guarded when she gave her instructions, and denied the conversation sworn to by Mrs. Hamilton. Here was presented a pure question of fact on which the jury found for the plaintiff. It was a jury question, and we cannot say that their finding was not supported by the evidence.

Considerable testimony was devoted to the question whether the transaction between the defendant and the employer was a sale or whether the machine was sent to the home for the purpose of trial and purchase if satisfactory. This question, however, seems to be unimportant as it is conceded by counsel for both parties that it is immaterial, and accordingly no question on that subject was submitted to the jury. Whether the transaction amounted to a sale or whether the machine was sent for the other purpose, the defendant was under no legal obligation to send a demonstrator unless it agreed or voluntarily assumed so to do. In this case defendant undertook the responsibility of giving instructions as to the proper mode of using the machine and how to avoid the dangers incident to its use. For that purpose Mrs. O'Driscoll was the agent of defendant, and if she was guilty of a want of ordinary care her negligence was its negligence. And when defendant undertook to inform the plaintiff as to the mode of using the machine

it assumed the responsibility of giving such information as was reasonably necessary for the purpose. *Buldra v. Henin,* 212 Mass. 275, 98 N. E. 863; *Miller v. International H. Co.* 193 App. Div. 258, 184 N. Y. Supp. 91.

It was admitted by defendant's witness that the use of the machine without the guard might subject inexperienced persons to danger. When defendant undertook to instruct the employer and the plaintiff as to the proper method of using the machine and avoiding danger, it assumed a direct duty to the plaintiff, who was for the purposes under consideration a member of the Karger family. The testimony is undisputed that the agent called the attention of the plaintiff, whom she was instructing, to certain dangers to be avoided, but did not give any warning of danger from the uncovered gears, and this is admitted by the answer of the defendant. This admission was consistent with the theory that the guard was on at the time of delivery and when the machine was demonstrated.

Much space is given in the briefs to the question whether a manufacturer or dealer is liable to third parties who have no contractual relation with him for negligence in the manufacture or sale of such articles. Defendant's counsel cited, and rely on, *Huset v. J. I. Case T. M. Co.* 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303; *Hasbrouck v. Armour & Co.* 139 Wis. 357, 121 N. W. 157; *Kerwin v. Chippewa S. M. Co.* 163 Wis. 428, 157 N. W. 1101, and many other cases. Plaintiff's counsel rely upon the exceptions stated in these cases and claim that the machine was inherently dangerous when delivered. In view of the ground on which we base our decision it is unnecessary to discuss this question. It therefore becomes immaterial to consider what would be the liability of defendant to some third person to whom it owed no special duty.

Defendant's counsel argue that plaintiff was guilty of contributory negligence as a matter of law. It is urged that if there was any danger in the use of this machine it

was obvious and would have been avoided by the use of ordinary care. The plaintiff before the accident had lived on a farm and had used a hand wringer. She was wholly unfamiliar with electric washing machines, their gearing and machinery, and had not seen this machine until the demonstration was made. She was warned as to certain dangers, but no mention was made of the danger which caused the injury. The question of her contributory negligence was for the jury.

It is one of the assignments of error that the damages are excessive. When help came to the plaintiff it required about fifteen minutes before her arm was extricated from the cog-wheels. She was taken to a hospital. There was a process of grafting by which skin was taken from her leg and placed upon her arm. There were thirteen pieces about the size of a ten-cent piece. A bandage was placed upon her arm and it could not be moved for about a week.

Plaintiff testified that up to the time of the trial her arm had continued to bother her; that there would be itching and a numb feeling; that she was more nervous than before the accident, not so strong, and more often required rest. At the trial she weighed about three pounds more than before the accident. The physician's bill was $150 and the hospital bill $95.25. There was loss of wages for seven weeks at $8 per week.

The physician testified that before the operation the upper arm was badly mangled and showed a series of tracks from about the middle of the arm up to the shoulder. Some of the flesh was torn out down to and including some of the muscle; that at the time of the trial the tracks caused by the cogs were shown by red, raised skin; an overgrowth of tissue at the side. It was an irregular scar, red, raised, and wrinkled by the contraction to some extent. The scars were quite disfiguring on the inner and outer surface of the arm although the wound had healed.

There was doubtless much physical and mental pain and

suffering following the unfortunate accident. The disfigured arm will cause to some extent lifelong humiliation, but the scars will not necessarily be exposed to the view of others. Although she believes she is not so strong as formerly, there is no very satisfactory evidence of lessened earning capacity. The verdict of the jury in this case is evidently no guide as to the proper amount of the recovery. It is probable that their sympathy ran away with their judgment. The trial court reduced the verdict from $7,200 to $3,500, but we are of the opinion that even that amount is excessive as compared with awards of damages which have been passed upon by this court. We do not think that the judgment in this case should exceed $2,500, and it should be modified to stand for that amount.

*By the Court.*—The judgment appealed from is modified as stated in the opinion, and as so modified is affirmed; appellant to recover its costs in this court.