RAY SPURLOCK, Appellant, v. UNION FINANCE COMPANY, a Corporation, Respondent, No. 42534—248 S. W. (2d) 578.

Division Two, April 14, 1952.

Rehearing Denied, May 12, 1952.

*Albert Thomson, Harold T. Van Dyke* and *Johnson, Davis, Thomson, Van Dyke & Fairchild* for appellant.

*J. R. Clagett* and *Thomas J. Wheatley* for respondent; *Kemp, Koontz, Clagett & Norquist* of counsel.

64

WESTHUES, C.—Plaintiff Ray Spurlock obtained a verdict for $10,000 against the Union Finance Company as damages alleged to have been sustained by plaintiff through the negligence of the defendant. The trial court overruled the defendant's motion for new trial, but sustained defendant's motion for a judgment notwithstanding the verdict and entered a judgment for the defendant. Plaintiff appealed and asked that the judgment be set aside and the trial court be directed to reinstate the verdict and enter judgment thereon.

The vital questions in this case are whether the evidence justifies a finding that the defendant was negligent; whether such negligence, if any, was the proximate cause of plaintiff's injuries; whether plaintiff was guilty of contributory negligence as a matter of law; and whether there was an intervening cause, that is, the negligence of a joint adventurer, so as to absolve the defendant from liability.

The evidence on the part of the plaintiff showed the following: The defendant in connection with its finance business operated a used car lot in Kansas City, Missouri, where repossessed cars were exhibited for sale. On March 5, 1949, plaintiff and one Ernest E. Cantril went to the car lot for the purpose of looking at cars with the intention of purchasing one if they found a car to their liking. Dillard Lyles was in charge of the sales for the defendant. A 1938 Buick was priced to Spurlock and Cantril for $125. Spurlock wanted to hear the engine run and it was discovered that there was no battery in the car. The three men went to the office where Lyles gave Spurlock and Cantril a battery which they installed. Lyles remained at the office. The car would not start and Spurlock and Cantril went to the office and

informed Lyles that the car would not start. Note Spurlock's evidence: "And so we went back around in front to the office, and we told Mr. Lyle just to forget about it, we wouldn't mess with it. And he said, 'Well, I have got some gasoline here,' says, 'Take some gasoline and pour in the carburetor and I think it will start right off.' " Spurlock and Cantril took the gasoline (which was in a quart can) given to them by Lyles and went back to the car. Cantril got into the car and Spurlock poured some of the gasoline into the carburetor. Cantril then depressed the starter and the motor turned over a few times but would not start. Spurlock then poured more gasoline into the carburetor and at about the time he finished Cantril depressed the starter whereupon the gas ignited, Spurlock's clothes caught fire, and he was seriously burned and injured.

The above version of the occurrence by Spurlock was corroborated by the evidence of Cantril.

Lyles testified that Spurlock and Cantril came to the office and asked for a battery and some gas for the purpose of using them to start the motor of the Buick in question; that Cantril had been there before and had looked at the Buick and knew where it was located; that he (Lyles) at no time went with the two men to the place where the car was parked on the day Spurlock was injured; that Spurlock had never been to the lot at any other time.

All witnesses agreed that Lyles, when he gave the gasoline to Spurlock and Cantril, did not warn them of any danger in attempting to start a motor by pouring gasoline [580] into the carburetor. Lyles testified the proper way to start or prime a motor is to remove the top or air filter from the carburetor, pour in the gasoline, replace the air filter, and then depress the starter; that that was the only way he knew to prime a motor. Lyles testified further that he did not know whether the method used by Spurlock and Cantril was dangerous.

Willis G. Sloan, an automobile mechanic, testified for plaintiff. His evidence was that it was dangerous to start a car by pouring gasoline into the carburetor; that some gasoline runs down "into the manifold and ofttimes they will backfire and ignite the gas, the surplus gas in the carburetor, cause it to burn." On cross-examination, Sloan gave the following testimony:

"Q. And there isn't anything dangerous about pouring gasoline in a carburetor as long as you don't step on the starter, is there?

"A. No.

"Q. So that the only danger is doing the two things at the same time?

"A. That is right.

"Q. And that is a matter of common knowledge that if you do those things at the same time that you are going to get—you are going to get fire or your gasoline is going to ignite?

"A. It would be to a mechanic, I dont know about the general public knowing that, a mechanic should know that."

Defendant has briefed a number of points claiming that the plaintiff failed to produce sufficient evidence to establish liability on the part of the defendant.

In deciding the question of defendant's liability, we must take into consideration that Spurlock and Cantril were on defendant's premises as business visitors or invitees. Restatement of the Law of Torts, Vol. II, Sec. 332. It must also be kept in mind that the defendant's agent in charge of the sales of cars furnished the gasoline and directed the two men to pour the gasoline into the carburetor and assured them the car would "start right off." No inquiry was made by the defendant's agent as to whether plaintiff and Cantril knew how to prime a carburetor nor did he warn them of any danger.

Defendant says plaintiff failed to show that the "defendant's agent possessed knowledge necessitating warning." The cases cited in support of this point pertain to conditions of premises under control of persons sought to be held responsible for injury resulting from such conditions. In such cases, liability is based on knowledge (either actual or implied) of the conditions. The authorities as cited in defendant's brief are: 65 C. J. S., Negligence, Sec. 51, page 547; Cash v. Sonken-Galamba Co., 17 S. W. (2d) 927, 322 Mo. 349; Giles v. Moundridge Milling Co., 173 S. W. (2d) 745, 351 Mo. 568; 65 C. J. S., Negligence, Sec. 45, pp. 524, 530. That doctrine does not control in this case. Here defendant's agent suggested a certain procedure to help the sale of a car. The agent's ignorance of the danger inherent in carrying out the suggested procedure is not an excuse. Performance of the operation was for defendant's benefit. One who supplies an article to another to be used for the benefit of the supplier must answer in tort if he failed to warn of any inherent danger. Ignorance in such case is not an excuse. Gobrecht v. Beckwith, 82 N. H. 415, 135 A. 20; Shaefer v. Investors' Co. of Oregon, 150 Or. 16, 41 P. (2d) 440.

In Restatement of the Law of Torts, Vol. II, Sec. 343(f), it is stated that a party in charge of premises "is required to have a superior knowledge of the dangers incident to the facilities which he furnishes * * *." In the case of Martin v. Maxwell-Brisco Motor Vehicle Co., 158 Mo. App. 188, 138 S. W. 65, a car salesman was demonstrating a car to a prospective purchaser. The customer was permitted to crank the car for the purpose of starting it. The engine backfired and the crank kicked back and broke the customer's arm. The Motor Company was held liable because its agent failed to warn plaintiff of the danger and in failing to instruct him in the proper method of cranking. In Orr v. Shell Oil Co., 352 Mo. 288, 177 S. W. (2d) 608, l. c. 614 (19), plaintiff was injured in the use of a chemical. This court in passing on the question of defendant's knowledge of the danger said, "As we read the record the tort pleaded and submitted was the

failure [581] of Shell to warn of the danger known to it in using the chemical. In order to impose this duty to warn on Shell, plantiff attempted to prove that Strain, Shell's inspector on the premises, was authorized by Shell to direct the handling of the chemical, assumed control of Orr and ordered him to work in a manner causing exposure to the chemical when Strain should have known the chemical was toxic. But plaintiff did not need to assume such burden because of the well-established rule that imposes directly a duty to warn on the one who supplies an article he knows is likely to be dangerous for the use intended.''

In this case both plaintiff and Cantril testified they did not know of the danger inherent in attempting to start a car by pouring gasoline into the carburetor. The defendant did not produce any evidence that such danger was known to them. The agent of the defendant who directed the gasoline be used made no inquiry whether the men appreciated the danger, nor did he give them any warning. Lyles testified he had been in defendant's employ for many years and had primed carburetors a number of times by pouring gasoline into them. We hold the evidence sufficient to justify a submission of the case to a jury. The evidence was also sufficient to justify a finding that the action of defendant's agent in directing Spurlock and Cantril to use gasoline without a warning of the danger was the proximate cause of plaintiff's injuries.

The defendant says that ''plaintiff was guilty of contributory negligence as a matter of law because he should have known what he did was dangerous.'' This position is somewhat inconsistent with defendant's contentions that its agent Lyles did not know of the danger. Be that as it may, in view of the evidence we are of the opinion that the question of contributory negligence was for a jury. Spurlock and Cantril were ready to abandon the idea of purchasing the Buick because it would not start. Defendant's agent Lyles then, in order to make a sale, furnished the gasoline and directed the men to pour it into the carburetor with the assurance the car would start. The question of contributory negligence was submitted to the jury. Is it unreasonable to say that Lyles should have foreseen that one of these men would sit in the car and attempt to start it while the other stood by the engine with the hood up, poured in the gasoline, and waited to see it start? We think not.

Defendant says Spurlock and Cantril were joint adventurers and, therefore, the negligence of the one was the negligence of the other; that Cantril in stepping on the starter while Spurlock was standing by the engine was negligent as a matter of law and that such negligence was the proximate cause of Spurlock's injuries and, therefore, absolved the defendant.

Cantril testified that he did not know the procedure followed was dangerous. The question was submitted to the jury and the jury were

told that if Cantril knew or should have known the method followed was dangerous and that Cantril was negligent, the jury should find a verdict for the defendant. The instruction was proper and justified by the evidence.

All of the defenses urged on this appeal were submitted to a jury by instructions requested by the defendant. The jury found against the defendant. The evidence was ample to support the finding of the jury on every point presented.

It follows, therefore, that the judgment entered for the defendant must be set aside and the cause remanded to the trial court with directions to enter an order setting aside the judgment, to reinstate the verdict of the jury, and to enter judgment in favor of the plaintiff as of the date of the verdict.

It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.