**WICHMAN**
v.
**ALLIS CHALMERS MFG. CO.**
No. 7541.

United States District Court
W. D. Missouri, W. D.
Jan. 18, 1954.

Popham, Thompson, Popham, Mandell & Trusty, Kansas City, Mo., Sebree, Shook, Hardy & Ottman, Stephens, Thornell & Millrone, Clarinda, Iowa, for plaintiff.

Kuraner, Freeman & Kuraner, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

This case was heretofore tried to the court without the intervention of a jury, the same having been waived. At the conclusion of the trial the cause was submitted on the evidence, arguments of counsel, and briefs.

It is charged by the plaintiff that he suffered injuries by reason of the negligence of the defendant in the following particulars: In April or May of 1947 the plaintiff was employed by a farmer named Donald Duncan. He said Duncan was operating a farm or farms near the town or city of Clarinda, Iowa. At that time plaintiff's employer purchased a farm machine designated as a Roto-baler. The Roto-baler was designed to pick up straw or hay from the windrows in the field, and then, by rolling such straw or hay into bundles or bales, it automatically wrapped same with twine. It was geared to, or connected up with, power equipment, so that it was mobile. And its design or construction was such as to be operated by one man. It had exposed rotating machinery. In its operation there was the constant threat of or hazard of injury unless the utmost care was exercised.

In his petition the plaintiff says in substance that it was innately, but not obviously, dangerous, and some of its machinery should have had, and could have had protective devices or shields so as to avoid the probability of injury in its use, but notwithstanding such hazards, known to the defendant, such

devices or protective shields had not been provided at that time. And it is further charged that the defendant, through its proper agent or agents, gave instructions or made demonstrations as to a safe manner in which such machinery should be operated.

To make effective the twine binding mechanism of the machine, it became necessary, on occasion in its operation, to put pressure upon the dangling, limp, and suspended twine used for binding purposes so that such twine would engage with the pressure rollers and thus effectively bind the bales. For that purpose, the defendant, through its proper agent, instructed the purchaser and plaintiff and demonstrated that such engagement could be consummated by pressing a quantity of hay or straw against the revolving rolls while they were in motion.

It is then alleged by the plaintiff that, obedient to such instructions and while thus pressing a quantity of hay against the limp twine and the pressure rolls, his right hand was caught and mangled. And that, in his efforts to extricate his hand, his right foot was drawn into the press rolls and was so mangled, together with a portion of his leg just below the knee, that amputation became necessary, and that he has suffered, not only from his disabilities, but from pain, since the accident.

The defendant by its answer denies the necessity or feasibility to protect any part of the machinery, and, moreover, it says that the danger was open and obvious to the plaintiff and that he recklessly placed himself in a position of peril and danger, and that the injuries suffered by him were occasioned by his own or contributory negligence.

Upon the pleadings thus made up each of the parties adduced testimony in support of his or its respective contentions. There is no controversy but that the plaintiff suffered the injuries claimed by him.

On behalf of the plaintiff, he testified that he was present at the time the instructions were given and the demonstration made by an agent of the defendant assigned by defendant for that purpose, and that, in following such instructions, his right hand, when placed with a quantity of hay within 6 to 8, or 8 to 10 inches, of the revolving rolls, was drawn into the rollers and that in his effort to extricate his hand, his right foot was drawn in, with the effect described or stated. No one was present at the time the plaintiff suffered his injuries. Upon his cry for help, witnesses, who were hard by, rescued him by dismantling the machinery. Donald Duncan, who had purchased the machine, testified that two agents of the defendant, that is, the dealer and a factory or blockman came to his farm and there demonstrated the manner in which the twine could be made to engage with the rollers. This testimony was supported by C. S. Duncan, the father of Donald Duncan, and the plaintiff.

The two agents of the defendant, that is to say, the dealer or distributor and the factory or blockman, whose duty it was to instruct the purchasers and users of the machine how to operate it without peril or danger, both said that the instructions and demonstrations were such that, in case the twine failed to engage with the hay in the rollers, a bunch of hay should be thrown at the twine and the rollers, and that it should not be pressed against them by hand. Moreover, both of these witnesses said that C. S. Duncan and the plaintiff were not present when the instructions were given and the demonstrations made. A book of instructions had been placed in a receptacle of the machine and such instructions forbade the method employed by the plaintiff, such as he claims he was instructed to use.

The plaintiff was badly hurt, spent a considerable time in the hospital, but presently is able to do some farm work. He can even use, to some extent, his damaged right hand and is able to operate machinery, although he wears an artificial right limb. According to physicians, the use of his right hand has a limitation of about 35%.

■■ 1. On the factual question, as to whether the plaintiff was in fact instructed as he claims, or as claimed by the defendant, a decision should be made in favor of the plaintiff for the reason that, under the law, a witness who testifies to the affirmative of a proposition is ordinarily entitled to be preferred to one who testifies to a negative. Stitt v. Huidekopers, 17 Wall. 384, 21 L.Ed. 644, 84 U.S. 384.

■■ In analyzing the testimony in the case, the defendant's witnesses who participated in the demonstration, while they said that the plaintiff and C. S. Duncan were not present, their testimony amounts to a negative, that is they did not see them. Both of the plaintiff's witnesses, C. S. Duncan, and Donald Duncan, testified positively that the plaintiff and C. S. Duncan were present. Moreover, plaintiff and Donald Duncan reinforced such testimony by saying that Donald Duncan called the plaintiff by 'phone so that he could be present at the demonstration. This was done because the plaintiff was an employee of Donald Duncan and it was apparently understood that he was to operate the machine. Furthermore, it is the rule that a witness is presumed to speak the truth. 70 C.J., Section 915, p. 760. And it is the duty of the trier of a fact to harmonize evidence by assuming on disputed matters that each witness was attempting to tell the truth and that he was mistaken on any factual question rather than committing perjury. It could not be well found on the face of the positive testimony of three witnesses that the plaintiff was not present at the time the demonstration was made.

As indicated, these three witnesses testified positively that the demonstrator or demonstrators, as agents for the defendant and expressly assigned for that purpose, repeatedly demonstrated that method of engaging the twine which was employed by plaintiff and which resulted so tragically.

It should have been stated that the plaintiff suffered his injury on July 28, 1947.

■ 2. The defendant earnestly objected to testimony that shields or protective devices were placed on this particular type of farm machinery after the accident occurred. The evidence was that the defendant recognized the hazards of the machinery, and before the accident to plaintiff had prepared and was in the course of distributing protective devices or shields so as to circumvent an accident like that suffered by the plaintiff. "A person undertaking to furnish machinery or appliances for the use of others ordinarily assumes a duty to furnish proper and safe appliances, * * *." 65 C. J.S., Negligence, § 70, p. 562.

■ 3. On the question of a manufacturer's liability in such case, it was said by the Supreme Court of Missouri in Willey v. Fyrogas Co., 251 S.W.2d 635, loc. cit. 640, in quoting from a Restatement of the Law of Torts (Section 395) following the well-known case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, as follows:

"'A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured * * * is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured.'"

This principle was also announced in Winkler v. Macon Gas Co., 361 Mo. 1017, 238 S.W.2d 386. The Supreme Court of Missouri there cited a Restatement of the Law of Torts, 238 S.W.2d loc. cit. 391, 392, and said, among other things, that it was negligence on the part of the vendor or manufacturer if it "'(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so.'"

A similar view was expressed in Lynch v. International Harvester Co., 60 F.2d

223, loc. cit. 224, Tenth Circuit, as follows:

"'* * * one who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not.'"

A somewhat similar case was before the Supreme Court of Wisconsin. The case is Karsteadt v. Phillip Gross Hdw. & Supply Co., 179 Wis. 110, 190 N.W. 844. Recovery was had in that case because of a faulty or erroneous demonstration, as in this case.

Many other cases from other jurisdictions were analogous to those hereinabove discussed.

■ It should have been stated that the accident occurred in Missouri, and that the law of the place of the accident is the law of the forum.

4. The only other question for consideration was what award should be allowed to the plaintiff. This is most difficult by reason of the varying views of the courts and the diversified results of jury trials.

In the case of Southern Pacific Co. v. Guthrie, 180 F.2d 295, 303, the Court of Appeals for the Ninth Circuit discussed at length a verdict in the sum of $100,-000 for the loss of a limb, in a similar case. The complainant in that case had lost a leg by reason of the claimed negligence of the defendant. The leg had been amputated above the knee. The plaintiff in that case was 59 years of age. The court said:

"It is common knowledge that for a man of Guthrie's age, aches and pains arising out of physical disabilities do not ordinarily lessen, as they might for a younger man."

And then, concerning the verdict, the court said:

"* * * it is the opinion of the members of this court that the amount of the verdict is too high. What we, as an appellate court, are permitted to do about such a situation, is another matter."

The conclusion reached by the reviewing court was that it was without authority to disturb the verdict, and the author of the opinion believed that the case should be reversed with a direction that a remittitur be ordered. And then the court significantly said:

"Neither the industry of counsel nor our own research has been able to turn up any case of any appellate court *where a verdict anywhere near so high as that rendered here has been upheld as compensation for comparable injuries.*" (Emphasis mine.)

In Dickson v. Beemer, Mo.Sup., 217 S. W.2d 515, Syl. 5, the Supreme Court of Missouri upheld "Judgment for $5,000 for loss of leg in middle third of thigh for a man of 60 years of age as result of being struck by automobile and who was earning $6 per day before accident was not grossly inadequate where there was nothing in record to show passion or prejudice on part of jury." The language of the court, 217 S.W.2d loc. cit. 518, was:

"A verdict will not be set aside unless there is something substantial to show prejudice or passion on the part of the jury, *or that it is grossly excessive or grossly inadequate.*" (Emphasis mine.)

In Jones v. Thompson, 353 Mo. 730, 184 S.W.2d 407, the Supreme Court of Missouri required a remittitur of $6,000 where the plaintiff had suffered a 90% loss of the use of his left hand. The verdict was $18,521; the amount approved was $12,521.

■■ Other cases have been examined, but little help has been obtained in an effort to reconcile differences and to arrive at a fair award in this case. The plaintiff has been subjected to several operations and continues to suffer pain as well as the disabilities arising from his injuries. His doctor bills and hospi-

tal bills were paid by his parents and amount to approximately $2,000. His attorneys, very properly, must be paid out of any award that is made to him. And it is a matter of common knowledge that the dollar is not worth as much now as a few years ago. Plaintiff's injuries were not as great as those mentioned in the Southern Pacific Co. case.

An allowance of $50,000 would appear to be reasonable.