ALLIS CHALMERS MANUFACTURING
COMPANY, a Corporation,
Appellant,

v.

Marvin WICHMAN, Appellee.

No. 15069.

United States Court of Appeals,
Eighth Circuit.

April 1, 1955.

Rehearing Denied May 2, 1955.

Walter A. Raymond and Alfred Kuraner, Kansas City, Mo. (Harry R. Freeman, Kansas City, Mo., on the brief), for appellant.

A. C. Popham, Kansas City, Mo. (David R. Hardy, Sam Mandell, Kansas City, Mo., Stephens, Thornell & Millhone, Clarinda, Iowa, and Popham, Thompson, Popham, Mandell, Trusty & Green, Kansas City, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

A farm employee was injured in Missouri, by having his hand and leg drawn into the compressing rollers of his employer's hay-baling machine, which he was operating. He said that he had been told and shown by the manufacturer's demonstrator-representative that, whenever the baling twine failed to engage with the rotating rollers as a result of having become broken or of there having been an insufficient flow of hay up the conveyor, he should stand on the frame of the machine near the top of the conveyor, at a distance of 6 to 10 inches away from the pressure rollers, and push the twine into contact with the rollers by means of some hay held in his hand. He claimed that he had thereafter so done a number of times in his use of the machine, but that on the occasion of the accident the hay had carried his hand into the rollers, causing his body to be jerked onto the conveyor and drawing his leg into the rollers.

He sued the manufacturer of the machine for damages in negligence, on the grounds that its demonstrator-representative had given him improper directions and assurances as to the manner in which he should and might safely cause the baling twine to become engaged with the rotating rollers, and further that the manufacturer ought in the exercise of due care to have equipped the baler with a shield to safeguard against some of the dangers of the exposed pressure rollers.

The defendant, in addition to claiming that it was utterly impossible for the accident to have occurred as plaintiff alleged, denied negligence on its part and also set up contributory negligence on the part of the plaintiff as an affirmative defense. The substance of its contention, both as to the lack of negligence on its part and as to the existence of contributory negligence on the part of plaintiff, was that the danger from any proximity to or contact with the moving pressure rollers was so obvious as to be readily and generally appreciable and not to require any shield to safeguard against the possibility of someone being misled as to its nature, and further that the danger also was so glaring that plaintiff was not warranted in relying upon the instructions claimed to have been given him as constituting a safe or proper method to cause the twine to become reengaged with the rollers.

The court, on a trial without a jury, declared, 117 F.Supp. 857, that defendant had been guilty of negligence in both of the respects charged by plaintiff; that plaintiff had not been guilty of contributory negligence, since he had followed the instructions given him by defendant's demonstrator-representative and reasonably was entitled to do so in the circumstances and relationships involved; that defendant's negligence had been the proximate cause of the accident; and that plaintiff had sustained injuries and damages as a result of the accident in the amount of $50,000. The defendant has appealed.

Defendant asks us to declare, among other things, as a matter of law that there was no negligence on its part in the situation, and that plaintiff in any event was guilty of contributory negligence. We cannot say, however, that the trial court was in error in viewing the questions, whether defendant's demonstrator-representative was guilty of a lack of due care in giving the directions and assurances which plaintiff claimed had been done, and whether plaintiff was contributorily negligent in following those instructions on the basis of the demonstrator's superior knowledge and purported experience and of plaintiff's own unfamiliarity with the machine, as constituting on the circumstances involved, under Missouri law, issues of fact and not of law.

There is, of course, no Missouri case that is identical on the facts. But the Missouri decisions seem to us to indicate generally that where one relies and acts upon the directions and assurances given him by another as to the proper manner

of performing a task or operation, in relation to which the latter legally can be said to owe him some duty as to his safety, it ordinarily is a question for the jury to resolve whether the directions and assurances given were improper and such as to amount to negligence in the particular circumstances, and also whether the reliance upon and following out of them in the situation involved constituted contributory negligence. See e. g. Whittington v. Westport Hotel Operating Co., 326 Mo. 1117, 33 S.W.2d 963, 968–969; Spurlock v. Union Finance Co., 363 Mo. 62, 248 S.W.2d 578; Martin v. Maxwell-Brisco Motor Vehicle Co., 158 Mo.App. 188, 138 S.W. 65.

An exceptional situation may of course at times be presented, in which the directions and assurances given are so obviously and glaringly dangerous that there cannot be said to be any room for a reasonable difference of opinion to exist on whether a normally prudent person would have refused to rely upon and follow them, as a matter of being willing, in the interest of his own safety, to accept the consequences, from his failure to do so, of any other considerations that might be involved in his tasks and relationships. We do not believe, however, that the present situation is required on its circumstances to be viewed as one of that extreme and inexorable nature. And this conclusion is fortified by the trial judge's considered appraisal that the evidence presented a submissible case under the standards of Missouri law. We have previously held that the question whether an issue is for the court or the jury in a diversity case is within the rule that on doubtful questions of state law we will accept the trial judge's considered appraisal of the local law of his jurisdiction, unless we are clearly convinced that he is in error. Nolley v. Chicago, M. St. P. & P. R. Co., 8 Cir., 183 F.2d 566, 572.

Defendant cites and relies upon Yaun v. Allis-Chalmers Mfg. Co., 253 Wis. 558, 34 N.W.2d 853, where an identical hay-baling machine was involved but a different method of causing the twine to become engaged with the rollers had been used by the plaintiff than that employed in the present case. The court there, in reversing a judgment for the plaintiff, said that "the hay baler when used as intended was not a thing of danger"; that the manner in which the plaintiff had sought to cause the twine to become engaged with the rollers constituted "a mistake in the method of use of the machine"; and that, in relation to the method which the plaintiff had so used, "The danger of the rollers was apparent in the present case." 34 N.W.2d at pages 858 and 859.

But a method of use found to have been expressly directed by defendant's demonstrator-representative, who was present for that express purpose, and constituting, according to plaintiff's testimony, the only one shown him and of which he had any opportunity for knowledge, could hardly legally be declared in the present situation to have constituted a mistaken and unintended one as against the manufacturer. And what significance would perhaps have been accorded in the Yaun case to any directions and assurances on the part of the manufacturer's demonstrator-representative, if they had existed, as to the method there used, such as the court found was the situation in the present case, would seem to have rather clear indication in another Wisconsin case, Karsteadt v. Phillip Gross Hardware & Supply Co., 179 Wis. 110, 190 N.W. 844, where liability for negligence was upheld on the basis of a demonstration of the use of a purchased machine.

We conclude that the trial court cannot be said to have erred in holding that a question of negligence was properly presented by the evidence for the trier of the facts to determine, on (1) whether the defendant's demonstrator-representative was guilty of a lack of due care, if he gave plaintiff such directions and assurances as plaintiff claimed had been done, and (2) whether the defendant, in relation to such instructions as might be found to have been so given and could be expected to be relied on, ought rea-

sonably to have equipped the rollers with some shield or guard, which would be capable of protecting a person, standing on the frame of the machine and attempting to push the baling twine into contact with the rotating rollers by means of some hay held in his hand, against the danger, at least in part, of having his body drawn into the pressure rollers, from his hand becoming caught and jerking him onto the conveyor. Our conclusion, as has been previously indicated, also is the same upon the submissibility of the question of contributory negligence.

■ Defendant, however, has further asked us to declare as a matter of law that it was physically impossible for the accident to have occurred as plaintiff claimed, in that, if he was jerked onto the conveyor from having his hand caught in the rollers, he would have lit upon the conveyor with his feet away from, instead of toward, the rollers, and that he therefore should be denied a recovery as a matter of having failed to establish proximate cause. But we do not deem it necessary to proper judicial functioning generally for a court to have to undertake as a matter of law to translate the involuntary contortions, gyrations and acrobatics of the human body in an accident situation—particularly when some part thereof has been suddenly caught in a machine—into equations of the science of physics in order to resolve the question of proximate cause.

In the first place, one who assumes to describe what occurred to him as he was undergoing momentary accident and injury can hardly be expected to be rendering a clinical study and account of his movements and reactions. What he thus testifies to will accordingly generally impress the listening mind, unless it believes him to be engaged in deliberate falsehood, as being inherently subject to the possibility of inaccurate impressions, unrecognized variables or affecting imponderables in what actually did occur. And before any judicial attempt is made to equate such a lay description

into scientific constants, it should be remembered that science itself is without any ultimacy, except upon a complete certainty that all the facts to which its answer relates have been accurately established and that they also are of an absolute nature.

Beyond this, as an incident in the functions of a court trial, it also is entitled to be borne in mind that what usually is involved in a contention of impossibility of happening on the basis of an injured party's story is an attempt to escape the traditional process for arriving at facts in judicial administration, through evaluation of credibility and weight on the whole evidentiary situation. More concretely stated, what actually is being sought to be reached by the claim of impossibility of happening is in most cases, as everyone realistically knows who has been engaged in the trial practice, the matter of the integrity of the injured party. But that question, for purposes of judicial functioning, is no less capable and no more difficult of proper resolution in relation to the possibility or impossibility of an accident having occurred as claimed, on the basis of the traditional process of credibility evaluation, than it is in relation to any other fact issue.

■ What was said by the Missouri Supreme Court of a similar contention, in Doyle v. St. Louis Merchants' Bridge Terminal Ry. Co., 326 Mo. 425, 31 S.W. 2d 1010, 1012, may in summary be repeated here: "We know from common knowledge that inexplicable happenings do occur. * * * The courts are reluctant to say that declared facts are manifestly impossible or untrue." Or, as more fully expressed by that Court in Pashea v. Terminal R. Ass'n of St. Louis, 350 Mo. 132, 165 S.W.2d 691, 694, and reiterated in subsequent cases, "We have often said that 'so frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that

no room is left for the entertainment, by reasonable minds, of any other.' "

Because of the vital part, however, which the traditional process of credibility and weight evaluation serves in judicial function, it is of course important that it be soundly exercised and that resort not be made to some improper basis or standard in its use in a particular situation—which brings us to the only other contention of defendant that merits discussion here. The contention is that the court's memorandum opinion demonstrates that it did not make a conventional use of the process of credibility and weight evaluation in arriving at the facts but resorted to the application of artificial rules and standards for determining the weight of the evidence in the situation.

Apart from the question of how the accident occurred as a matter of proximate cause, the dominating question on liability in the case was whether such instructions and assurances, as plaintiff claimed, had in fact been given him by defendant's demonstrator-representative. The court's resolution of this fact in favor of plaintiff constituted the pivotal basis for its major finding of negligence against defendant and for its finding of freedom from contributory negligence on the part of plaintiff.

Defendant's demonstrator-representative had testified positively that he never had given plaintiff any such instructions or assurances as plaintiff claimed, nor any other instructions or assurances in regard to the use of the machine; that he never had had any occasion or opportunity to give plaintiff any instructions at all, because plaintiff was not present at the only demonstration which he ever made of the machine for plaintiff's employer prior to the accident; that the only persons present at the demonstration were plaintiff's employer, the implement dealer by whom the machine had been sold to plaintiff's employer, and himself; that the three of them had driven together from the farmhouse of plaintiff's employer out to the field where the baling machine was to be demon-strated, and neither plaintiff nor the employer's father (who testified in corroboration of plaintiff's story) had accompanied them or subsequently appeared on the scene; that the employer's father was engaged in doing chores in the farmyard at the time they left the house and never came out to the field; that plaintiff, who did not live on his employer's farm and worked for the latter only intermittently, was on that day neither at the house nor any place in the field; that the story of plaintiff, his employer, and the employer's father that the demonstrator-representative had had each of them engage in the task of establishing contact between the twine and the rollers with a handful of hay, by standing on the frame of the machine near the rollers, was false and untrue; that the only person, as previously stated, to whom any demonstration had been made was plaintiff's employer; and that the method shown him and which he had engaged in trying (which method it is unnecessary here to describe) was not the method used by plaintiff at the time of the accident and not one which called for any proximity to the rollers or standing on the frame of the machine.

The implement dealer testified to the same facts as the demonstrator-representative. On the other hand, plaintiff, his employer, and the employer's father all testified that the three of them were present at the demonstration; that the instructions and assurances which plaintiff claimed had been given had in fact been so given to all of them; and that the demonstrator-representative had had each one of them separately and personally undertake the task of engaging the twine with the rollers, under his direct supervision, in the manner that plaintiff claimed.

The court's memorandum opinion indicates that it arrived at the facts out of this conflicting state of testimony on the following basis: "On the factual question, as to whether the plaintiff was in fact instructed as he claims, or as claimed by the defendant, a decision should be made in favor of the plaintiff

for the reason that, *under the law,* a witness who testifies to the affirmative of a proposition is ordinarily entitled to be preferred to one who testifies to a negative. \* \* \* In analyzing the testimony in the case, the defendant's witnesses who participated in the demonstration, while they said that the plaintiff and (the employer's father) were not present, *their testimony amounts to a negative, that is they did not see them.* \* \* \* It could not be well found on the face of the positive testimony of three witnesses [as against the so-called negative testimony of defendant's two witnesses] that the plaintiff was not present at the time the demonstration was made." (Emphasis supplied.) 117 F.Supp. at page 860.

Thus, it would appear that the court treated the testimony of plaintiff's witnesses as constituting positive evidence and that of defendant's witnesses as representing negative evidence only, with the duty resting on it in consequence to accord greater weight to plaintiff's evidence than to defendant's evidence, as a matter of law, such as appears to be suggested by some of the early Missouri cases. For example, in Henze v. St. Louis, K. C. & N. Ry. Co., 71 Mo. 636, 639, it was said: "If the witnesses are equally credible, although the number of those who say they did not hear [or see some particular thing] exceeds that of those who say they did, yet the testimony of the latter is to be regarded as establishing the fact, because it is consistent with, and not contradictory of, the negative evidence." Or, again, as declared in Isaacs v. Skrainka, 95 Mo. 517, 8 S.W. 427, 428, "It is a familiar rule that, where the witnesses are equally credible, the positive evidence that a given thing was said is of more weight than that of others who say they did not hear the alleged statement."

■ We need not stop to examine whether this still is the rule in Missouri, for regardless of what superior weight, if any, positive evidence might otherwise be required to be accorded over negative evidence as a matter of Missouri law,

we are unable to see how the court could properly call the testimony of defendant's witnesses in the present situation negative evidence, such as could be subject to any mechanical basis or standard of probative weight.

The testimony of the demonstrator-representative (and also of the implement dealer who cooperated with him in conducting the demonstration) was not to the effect that they had not seen plaintiff at the demonstration; they testified affirmatively and unequivocally as a fact that plaintiff was not at all there. Nor was their testimony a matter of whether they had heard any instructions such as plaintiff claimed had been given; it was a head-on question of whether they themselves had or had not given any such instructions, and whether their story was true or false that no such instructions or assurances had been given by them to anyone, but that on the contrary they had demonstrated, and only had demonstrated, as the proper means of causing the twine to engage with the rollers, an entirely different method, which called for no standing upon the frame of the machine or any proximity to the rotating rollers.

Thus, there was no basis to impose any starting, artificial weight-handicap upon their testimony as a matter of law, but such testimony was entitled to the benefit of the application of the regular process of credibility and weight evaluation in relation to all the other witnesses and evidence in the case. The application of that process was of further direct importance in the situation as to these witnesses, since their testimony included a claim, denied by plaintiff, that plaintiff had initially stated that the accident occurred when he stepped upon the conveyor to remove a piece of rock therefrom and was caused by the motion of the conveyor to slip and fall against the pressure rollers, and that he had made no claim, until four years later, that the accident had occurred as a result of his attempt to cause the twine to become engaged with the rollers, while standing on the frame of the machine.

As said in the recent case of Owen v. Commercial Union Fire Ins. Co. of New York, 4 Cir., 211 F.2d 488, 489, "The rule that an appellate court will not disturb findings of fact made by the trial judge unless they are clearly erroneous does not apply if he has committed an error of law which has manifestly influenced or controlled his findings of fact, such as mistake as to the burden of proof"— or, as here, the mistaken according of particular weight to evidence, controlling of a material part of the findings, on the basis of some legal rule which has no application to the class of evidence involved.

The other contentions made by defendant are answered by previous decisions of this Court, which there is no occasion for us to reexamine.

The judgment is reversed and the cause is remanded for a new trial.