Edward ROGERS, Plaintiff-Appellant,

v.

WHITE METAL ROLLING AND STAMP-ING CORPORATION, Defendant-Appellee.

No. 21, Docket 24528.

United States Court of Appeals Second Circuit.

Argued Oct. 17, 1957.

Decided Nov. 12, 1957.

2. See § 7482, Internal Revenue Code, 26 U.S.C.A. § 7482; Rule 52(a), Fed.Rules Civ. Proc. 28 U.S.C.A.

John J. Hunt, Bridgeport, Conn., for plaintiff-appellant.

Pullman, Comley, Bradley & Reeves, Bridgeport, Conn. (Edgar W. Bassick, III, of counsel), Bridgeport, Conn., for defendant-appellee.

Before MEDINA, HINCKS and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Edward Rogers, a resident of Missouri, brought this action against the White Metal Rolling and Stamping Corporation, a New York corporation authorized to do business in Connecticut,[1] to recover damages for personal injuries he sustained in Missouri while he was using a ladder manufactured by the defendant. Defendant moved for summary judgment. Thereafter, and before decision upon defendant's motion, plaintiff sought leave to amend his complaint. The District Court denied plaintiff leave to amend and granted defendant's motion for summary judgment. From these orders plaintiff appeals.

On January 27, 1955 the plaintiff, while employed by the Patton Creamery Company at its creamery in Springfield, Missouri, was injured when a ladder which he was using collapsed while he was standing upon it. The ladder had been purchased by Patton no later than March 11, 1954 from the Standard Equipment Co. of New York, who, in turn, had purchased it from the defendant manufacturer. The trial court found that the ladder had been manufactured prior to January 25, 1954. On January 25, 1956, less than a year after the date of the injury, but more than a year after the ladder had been manufactured by the defendant, the plaintiff instituted this action in the United States District Court for the District of Connecticut, alleging the negligent manufacture of the ladder and its consequent unfitness for the purpose for which it was sold. By its motion for summary judgment, the defendant asserted that the plaintiff's claim was barred by the Connecticut statute of limitations [2] since the action was not commenced "within one year from the date of the act or omission complained of * * *"

The District Court, relying on Dincher v. Marlin Firearms Co., 2 Cir., 1952, 198 F.2d 821 and Vilcinskas v. Sears, Roebuck & Co., 1956, 144 Conn. 170, 127 A.2d 814, properly held that the claim stated in plaintiff's original complaint was barred by the statute and granted the motion.

After defendant filed its motion, but before the court granted it, the plaintiff, pursuant to Rule 15(a), Fed.Rules Civ. Proc., 28 U.S.C.A., sought leave of the court to amend his original complaint to allege the negligence of the defendant "in that although it [the defendant] knew, or in the exercise of reasonable

1. Jurisdiction over the person of the defendant was obtained by service of summons upon the Secretary of State as its statutory agent. See General Statutes of Connecticut, § 2590d (Supp.1955).

2. Section 8324 of the General Statutes of Connecticut (Rev.1949) provides:
   "Sec. 8324. Limitation of action for injury to person or property. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, chiropodist, chiropractor, hospital or sanatorium, shall be brought but within one year from the date of the act or omission complained of, except that a counter-claim may be interposed in an action which has been brought within the year at any time before the pleadings in such action are finally closed."

care should have known, that due to its negligence said ladder was unfit and unsafe as aforesaid, nevertheless, it failed to take any steps to remedy said defective condition either by repairing or replacing the same, or to warn the plaintiff or any other person who might have occasion to use said ladder that the same was in such a dangerous and defective condition." The court, by an order dated January 3, 1957, the same day that it granted defendant's motion for summary judgment, denied this motion of plaintiff on the apparent ground that under Connecticut law the claim stated in the amended complaint also would be time-barred.

■■ The granting or the denial of a motion to amend a complaint filed after a responsive pleading has been served[3] is within the discretion of the trial court, 1 Barron and Holtzoff, Federal Practice and Procedure § 445 (Rules Ed. 1950). However, the appellate court should vacate the judgment below if the denial was based upon an erroneous belief that the amended complaint would fail to state a claim upon which relief could be granted, cf. Sheridan-Wyoming Coal Co. v. Krug, 1949, 84 U.S.App.D.C. 288, 172 F.2d 282 reversed on other grounds, sub nom. Chapman v. Sheridan-Wyoming Coal Co., 1950, 338 U.S. 621, 70 S.Ct. 392, 94 L.Ed. 393; cf. United States v. A. H. Fischer Lumber Co., 4 Cir., 1947, 162 F.2d 872; or if the controlling law has been altered or clarified during the time the appeal has been pending, cf. Vandenbark v. Owens-Illinois Glass Co., 1941, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327. Within three months after the U. S. District Court entered judgment for this defendant, the Supreme Court of Errors of Connecticut in Handler v. Remington Arms Co., 144 Conn. 316, 130 A.2d 793, 795 (March 26, 1957) again construed Section 8324 (note 2 supra), and concluded that "When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed."

In Handler the continuing course of conduct alleged to be wrongful was the failure of the defendant manufacturer to inform the user of the dangerous condition of the product manufactured by the defendant. The Connecticut court, 130 A.2d 793, at page 795, characterized this wrongful conduct: "This was not a claim of an act or omission completed at the time the ammunition was sold * * * Instead it was a claim of conduct continuing to the time of injury." In the present case the plaintiff seeks by his proposed amendment to allege a similar failure of duty in that the defendant did not warn him of the defective condition of the ladder. Hence it follows that if upon the allowance of the plaintiff's proposed amendment the complaint would state a good cause of action the cause of action so stated would not be time-barred by Section 8324.

■■ Under Connecticut law we are referred to the law of Missouri to determine if the amended complaint would state a cause of action. Bohenek v. Niedzwiecki, 1955, 142 Conn. 278, 113 A.2d 509. Analysis of the decisions of the Missouri courts establishes that plaintiff not only has a cause of action for the negligent manufacture of the ladder, Willey v. Fyrogas Co., 363 Mo. 406, 251 S.W.2d 635, but that the liability of defendant may also be predicated upon its continuing failure to warn plaintiff of the defective condition of the ladder. Spurlock v. Union Finance Co., 363 Mo. 62, 248 S.W.2d 578; Orr v. Shell Oil Co., 352 Mo. 288, 177 S.W.2d 608; Wichman v. Allis Chalmers Mfg. Co., D.C.W.D.Mo. 1954, 117 F.Supp. 857, reversed on other grounds, 8 Cir., 220 F.2d 426, certiorari denied 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745. The Orr case was an action to recover damages for injuries sustained by the plaintiff due to the toxic effects of a chemical which he handled during the course of his employment. Recovery was sought from the company which sup-

---

3. Prior to its motion for summary judgment, the defendant had filed its answer to the original complaint.

plied the chemical to plaintiff's employer. The Supreme Court of Missouri affirmed a judgment for the plaintiff, basing its decision upon the failure of defendant to warn plaintiff of the dangerous properties of the chemical. In its opinion the court spoke of the "inherently dangerous" qualities of the chemical, but there is no indication that by the use of this phrase the court intended to limit the applicability of its decision. In fact, such an inference is expressly negatived by the court's reliance upon Section 388 of the Restatement of Torts, the text of which was quoted in full in the court's opinion, and which is set forth in the margin.[4]

When the conditions for imposing liability set forth in Section 388 are fully met, the applicability of the section is not limited to the suppliers of "inherently dangerous" products. It is immaterial whether the chattel is "inherently dangerous" or dangerous because defectively manufactured. For example, one of the fact situations illustrating the meaning of Section 388 deals with the liability thereunder of a manufacturer of ladders.[5]

■■ We conclude that if the complaint were amended as proposed, the amended complaint would then state a good cause of action which would not be barred by the Connecticut statute of limitations. The order of the District Court denying leave to amend was handed down prior to the decision in Handler v. Remington Arms Co., supra. Under these circumstances, we are remanding to the District Court in order for it to exercise its discretion in the light of the Handler opinion. See the mandate of the Court of Appeals in Sheridan-Wyoming Coal Co. v. Krug, 1948, 83 U.S. App.D.C. 162, 168 F.2d 557 quoted in Sheridan-Wyoming Coal Co. v. Krug, 84 U.S.App.D.C. 288, 172 F.2d 282 at page 284.

Vacated and remanded.

---

4. The Missouri court in Orr v. Shell Oil Co., 352 Mo. 288 at pages 294–295, 177 S.W.2d 608 at page 612, said: "The rule has been more fully expressed in the Restatement of Torts, § 388 where its application to this case is plainly demonstrated." Then Section 388 is quoted in full. It reads:

§ 388. Chattel Known to Be Dangerous for Intended Use.

One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

(b) and has no reason to believe that those for whose use the chattel is sup-

plied will realize its dangerous condition; and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so.

5. The illustration referred to is Illustration 4 found in the Comments on Section 388 at p. 1047 of Restatement of the Law of Torts, 1934 edition. It reads:

4. The A Manufacturing Company makes a lot of ladders out of a parcel of wood, some of which is knotted. It is impossible to see the knots after the ladders are painted. One of the ladders is sold to B. While C, B's servant, is using the ladder it breaks because of the knots in the wood of which it is made. The A Company is liable to C, although at the time the ladder was sold it appeared perfectly sound and the sales department which sold the ladder had not been informed that defective material had been used in the construction of this lot of ladders.